S05A0929. ALEXANDER v. THE STATE.
(620 SE2d 792)

MELTON, Justice.

Andre Levar Alexander appeals his conviction for burglary and false imprisonment,[1] contending, among other things, that Georgia's false imprisonment statute, OCGA § 16-5-41 (a), is unconstitutionally vague. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that, during the night of April 29, 2002, Alexander, without permission, crawled through a window into the home where Shavonda

---

[1] Alexander was indicted for these crimes on August 22, 2002. His first trial ended in a mistrial. Alexander was retried on both counts of the indictment on April 8, 2003, and he was convicted by a jury on both counts. The trial court sentenced him to ten years to serve and ten years on probation for burglary and a concurrent ten years to serve for false imprisonment. Orders denying Alexander's motion in arrest of judgment and motion for new trial were entered by the trial court on January 13, 2005, and Alexander filed a notice of appeal on February 14, 2005. The appeal was docketed on February 22, 2005 and submitted for decision on the briefs.

Martin, a relative of his, was living. Alexander then entered Martin's bedroom, and, while Martin was sleeping, he placed his hand over her mouth and pinned her to the bed, thereby restricting her movement. Martin woke up, screamed, and struggled with Alexander. Once Martin began screaming, Alexander fled through the same window he had entered. He later admitted that he had entered Martin's home, and Martin, as well as other members of her family, positively identified Alexander as the intruder.

In addition to this evidence, details of two prior similar acts were presented. First, on the night of September 22, 2001, Alexander, without permission, entered Hattie Dawson's home by crawling through a window. Dawson personally knew Alexander and identified him as the intruder. Second, on the morning of October 2, 2001, Alexander broke into Jeanna Bentley's home without permission, and he attempted to rape her as she was getting out of her shower. Like the other victims, Bentley knew Alexander, who had attended the same high school she had attended.

1. The evidence was sufficient to enable a rational trier of fact to find Alexander guilty beyond a reasonable doubt of the crimes for which he was charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The record shows that, on August 22, 2002, Alexander was indicted for burglary and false imprisonment. On March 31, 2003, Alexander was tried for false imprisonment only, and a mistrial was declared because the jury was unable to reach a verdict. On April 8, 2003, Alexander was retried for both burglary and false imprisonment as set forth in the original indictment, and he was convicted by a jury on both counts. Alexander now contends that, following the earlier mistrial, the trial court erred by allowing him to be retried on both the false imprisonment and burglary charges. We disagree.

Prior to his first trial on March 31, 2003, Alexander filed a motion to dismiss the indictment, and, in response, with the trial court's assent, the State redacted the burglary count from the indictment and proceeded only on the count of false imprisonment. Alexander agreed to this arrangement. When Alexander was retried on April 8, 2003, however, the trial court determined that the State could prosecute Alexander on both the burglary and false imprisonment charges.[2] Alexander takes issue with this ruling, specifically arguing that: (a) the State was not authorized to retry him on an indictment on which a mistrial had previously been based and was, instead, required to seek a second indictment before the grand jury before it

---

[2] The trial court stated that it was inclined to rescind any order it had entered allowing the dismissal of the burglary count during Alexander's original trial.

could continue its prosecution of his case, and (b) the trial court erred by denying his motion in arrest of judgment in which he argued that retrial on the burglary charge subjected him to double jeopardy.

(a) Alexander's contention that the State was not authorized to retry him on his original indictment following a mistrial is without merit. See, e.g., *State v. Lane*, 218 Ga. App. 126 (460 SE2d 550) (1995) (since jury had not entered verdict on murder charge prior to mistrial, State could retry defendant on both murder charge and lesser included offense of voluntary manslaughter under *original* indictment).

(b) Contrary to Alexander's arguments, retrial on the burglary charge did not subject him to double jeopardy, and the trial court did not err by denying his motion in arrest of judgment on this regard. With regard to Alexander's claim that his retrial was barred by constitutional double jeopardy, the transcript reveals that, at the time that the agreed upon redaction or dismissal of the indictment occurred, the jury had not been sworn in this case. Because jeopardy does not attach in a jury trial until the jury is impaneled and sworn, *Laster v. State*, 268 Ga. 172 (1) (486 SE2d 153) (1997), jeopardy had not attached to the burglary count at the time that it was redacted from the indictment. To the extent that Alexander argues that his retrial was barred by the extended protection of procedural double jeopardy embodied in OCGA § 16-1-8, Alexander has waived any such claim. As a general rule, a defendant's failure to file a written plea in bar prior to a second trial waives the right to subsequently raise a challenge on procedural double jeopardy grounds. *McCormick v. Gearinger*, 253 Ga. 531, 533 (3) (322 SE2d 716) (1984). In the analogous situation here, despite the fact that there was extended colloquy prior to the second trial concerning the charges which Alexander would have to answer, Alexander wholly failed to raise the doctrine of procedural double jeopardy prior to his second trial, whether orally or in writing. As a result, he may not raise this issue for the first time in this appeal.

3. Alexander contends that Georgia's false imprisonment statute, OCGA § 16-5-41 (a), is unconstitutionally vague. This statute provides: "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Specifically, Alexander contends that neither the statute nor related caselaw provides a definition of the verb "confines," and, as a result, the statute fails to adequately place a defendant on notice of the acts which fall under the statute.

Because Alexander's constitutional challenge in this instance does not involve the First Amendment, we must restrict our review to the application of the ordinance to Alexander's conduct in this case.

*Thelen v. State*, 272 Ga. 81 (526 SE2d 60) (2000). In general, a statute will be considered to be unconstitutionally vague only if it fails to convey a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," *United States v. Petrillo*, 332 U. S. 1, 7-8 (67 SC 1538, 91 LE2d 1877) (1947) and "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Anderson v. Atlanta Comm. for the Olympic Games*, 273 Ga. 113, 114 (1) (a) (537 SE2d 345) (2000). To satisfy due process considerations, criminal ordinances must place a person of ordinary intelligence on notice that his contemplated conduct is illegal. *Hall v. State*, 268 Ga. 89, 92 (2) (485 SE2d 755) (1997).

The word "confine" has a commonly understood meaning which would place a person of common intelligence on notice of the prohibited acts. For example, Webster's Ninth New Collegiate Dictionary defines "confine" as follows: "1. To hold within a location . . . 2. To keep within limits." In turn, Black's Law Dictionary, Sixth Edition, defines the term confinement in a similar manner as: "shut in" or "imprisoned." Given the common meaning of "confine," Alexander was on notice that his actions in this case were illegal, and the jury was authorized to determine, as it clearly did, that Alexander's actions of confining Martin constituted false imprisonment.

4. Alexander asserts that the trial court erred by sentencing him for both burglary and false imprisonment because the latter crime merged with the burglary count as a matter of fact. "To complete the crime of burglary, [however,] it is not necessary that a defendant actually commit a . . . felony; it is sufficient if [the defendant] enters without authority and with the intent to commit a . . . felony." (Punctuation omitted.) *Childs v. State*, 257 Ga. 243, 251 (12) (357 SE2d 48) (1987). Therefore, Alexander's offense of burglary was completed when he entered the home without authority with the intent to falsely imprison Martin, and it was unnecessary for the State to further prove that he actually committed the subsequent false imprisonment. Accordingly, the offense of false imprisonment was not included in the offense of burglary as a matter of fact or law.

5. In addition to the general grounds, Alexander argues that the trial court erred by denying his motion for a new trial because: (a) the trial court did not instruct the jury as to which count of the indictment the similar transaction evidence related and (b) he was improperly prevented from arguing to the jury in his closing that the terms "detain" and "confine" as used by OCGA § 16-5-41 (a) have separate meanings.

(a) The record reveals that the trial court fully charged the jury regarding the nature and use of similar transaction evidence. Alexander requested no further instructions orally or in writing, and he

has provided no authority indicating that any such instructions were warranted under the circumstances presented here. His unsupported contention, therefore, lacks merit.

(b) Alexander's contention that he was improperly prevented from arguing to the jury in his closing the difference between the terms "detain" and "confine" as used by OCGA § 16-5-41 (a) also fails. As requested by Alexander, the trial court charged the jury that "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he confines such person without legal authority." This instruction was suited to both the indictment and the evidence. As the false imprisonment charge was based on the concept of confinement, a concept easily comprehended by a juror of common intelligence, the trial court did not err by limiting Alexander's closing argument to a discussion of that concept alone.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2005.

*Michael B. King*, for appellant.
*Scott L. Ballard, District Attorney, Gail M. Travillian, Cindy L. Spindler, Assistant District Attorneys*, for appellee.