## A05A2071. BAKER v. THE STATE.
## A05A2072. DRESCHER v. THE STATE.
### (627 SE2d 145)

JOHNSON, Presiding Judge.

A judge, sitting without a jury, found Bryan Baker guilty of possession of cocaine and driving with a suspended license. The judge also found Sherri Drescher, who was Baker's girlfriend, guilty of possession of marijuana and possession of methamphetamine. In Case No. A05A2071, Baker appeals from the denial of his motion to suppress evidence obtained from the stop and search of his vehicle. In Case No. A05A2072, Drescher appeals from the denial of her motion to suppress evidence found during a search of her residence following Baker's arrest. Because the appeals involve common facts and both appellants challenge the validity of the initial stop, we will consider the appeals together.

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where, as here, the evidence is not controverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[1]

At the hearing on the motion to suppress, a narcotics agent with the Henry County Police Department testified that an agent with the Clayton County Police Department called him and reported that he had received a tip from a confidential informant regarding a future drug transaction. The informant had described the subject by race, gender, approximate height, and hair color, and noted that he wore eyeglasses. The informant told the Clayton County officer that the subject would be driving a black or green Dodge truck or Jeep, that he would be in the area of Rock Quarry Road, near either the Wendy's or Dairy Queen restaurant, and that he would be in possession of ecstacy for use in a drug transaction "in the near future."

Based on this information, Henry County officers went to the Rock Quarry Road area and saw a black Dodge pickup truck parked at Wendy's. They watched a man matching the description given by the informant exit the restaurant and get into the pickup truck. The man drove the truck out of the parking lot to a gas station, circled slowly around the gas station several times, drove back to Wendy's, then parked there for a minute or two. The truck then left Wendy's and went to the parking lot of Sydney's Steakhouse, where it pulled alongside a white pickup truck, and remained for ten to fifteen seconds. It was getting dark outside, and officers could not see what

---

[1] See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

the drivers were doing. Both trucks then left. Believing a drug transaction had just taken place, one of the officers stopped the black Dodge pickup truck. Baker was driving that truck.

Police then ran a license check and determined that Baker's driver's license was suspended. Officers asked Baker if he would consent to a search of the truck. He consented. A search of Baker's truck resulted in the discovery of cocaine and marijuana. It was about 8:00 in the evening when this occurred.

While arresting Baker, officers asked him if he had any more drugs at his house. He replied, "I don't believe I do, but if I do it's just going to be marijuana." Officers drove Baker to Drescher's home, where Baker was staying. When Drescher answered the door, she saw four police officers standing with Baker, who was handcuffed. One of the agents informed Drescher that Baker had been arrested, and asked if any of Baker's items were there. He added that Baker gave officers consent to search his items. The officer asked Drescher if she had any drugs in the house. She said she did not. The officer asked for consent to search the house. At that point, "[s]he allowed us in." Drescher also consented to a search of her purse. Officers found methamphetamine and marijuana in Drescher's purse.

## Case No. A05A2071

1. Baker contends the stop of his truck was based on mere suspicion or a hunch and was therefore unconstitutional. We agree the stop was not justified and reverse the trial court's decision denying his motion to suppress.

Even if there is no probable cause to arrest for a traffic or other offense, the Fourth Amendment allows police to stop a vehicle to investigate a reasonable suspicion of criminal activity.[2] To meet the reasonable suspicion standard, police must point, under the totality of the circumstances, to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting the particular person stopped of criminal activity.[3] Accordingly, a general suspicion or a mere hunch is not sufficient to support an investigative stop.[4] "This demand for specificity in the information upon which police action is predicated is the central teaching of Fourth Amendment jurispru-

---

[2] *Slocum v. State*, 267 Ga. App. 337 (599 SE2d 299) (2004).
[3] Id.
[4] Id. at 338.

dence. The State bears the burden of presenting evidence that demonstrates a reasonable suspicion of criminal activity."[5]

Although the primary means by which officers acquire reasonable suspicion is personal observation, information acquired from an informant that exhibits a sufficient indicia of reliability can also be the basis for reasonable suspicion.[6] In this case, we find that the state has failed to meet its burden of demonstrating that the confidential informant's tip and their own observations were sufficient to support the stop.

(a) *The confidential informant's tip.* Where police acquire information from an anonymous informant or one of unknown reliability, this is ordinarily not a sufficient basis to provide reasonable suspicion, unless the information exhibits sufficient indicia of reliability.[7] For example, information provided by these types of informants may exhibit sufficient indicia of reliability if it provides details correctly predicting a subject's "not easily predicted" future behavior, or if it provides other details which police corroborate as showing similar inside information about the subject's affairs.[8]

In this case, the state presented no evidence regarding the source of the information. Nor did it show that the tip itself was reliable. The tip described Baker's physical appearance, but was not definitive about the make or color of the vehicle; the vehicle was either a Dodge truck or a Jeep, and either black or green in color. The tip did not include a tag number for the vehicle. There were no details predicting Baker's movements or activity, just that he would be in the area of either of two restaurants. The restaurant location at which Baker's truck pulled alongside another truck (the point at which the officer concluded a drug transaction had taken place) was not even one of the locations named in the tip. The tip did not include any prediction as to the time at which the transaction would occur, other than "in the near future." The information provided here was simply not the kind of predictive "inside information" about alleged criminal activity that can be meaningfully corroborated and that is necessary to support an investigatory stop.[9]

---

[5] (Citations and punctuation omitted.) *McSwain v. State*, 240 Ga. App. 60, 61 (522 SE2d 553) (1999).

[6] *Slocum*, supra.

[7] Id.

[8] Id.; see *Rucker v. State*, 276 Ga. App. 683, 684 (624 SE2d 259) (2005).

[9] See *McSwain*, supra. Compare *State v. Holton*, 205 Ga. App. 434, 435-436 (1) (422 SE2d 295) (1992) (stop justified where anonymous tip predicted time of future drug transaction, description of car involved, description of car's occupants, particular liquor store which participants would enter, description of car, location at which car would be parked, and that participants would enter store, cash checks, buy liquor, then exit store and approach car to buy

(b) *Officers' observations.* Officers situated near one of the two locations designated by the confidential informant watched a man fitting Baker's description get into a truck, drive to a nearby gas station, circle the gas station, drive back to the restaurant, park the truck, drive to another restaurant, pull alongside another truck, and leave a few seconds later. They did not see Baker do anything illegal or violate any traffic laws, nor did they see what happened when Baker's truck pulled alongside the other truck.[10] And though officers had information before the surveillance that Baker had a suspended driver's license, they did not know that the man they were watching was Baker. The only officer who testified said that the truck was stopped because of suspicious activity. Viewing the totality of the circumstances, the initial stop was not justified in this case.[11] Accordingly, the trial court erred in denying Baker's motion to suppress evidence seized as a result of the stop.

## Case No. A05A2072

2. Drescher contends the trial court erred in denying her motion to suppress. She urges that Baker was illegally seized and his illegal seizure and detention tainted her consent to search her home. We agree.

The exclusionary rule bars the admission of evidence obtained as the result of an illegal search because it is "fruit of the poisonous tree."[12] However, evidence is not "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police.[13] Rather, the inquiry in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.[14] Thus, even if evidence would not have been discovered but for the illegal police conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed.[15] The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and

---

marijuana, all facts corroborated by police except for the purchase of marijuana).

[10] Compare *Howard v. State*, 265 Ga. App. 835, 837 (595 SE2d 660) (2004).

[11] See *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998) (stop not justified where officer claimed to know neighborhood's residents and vehicles, and did not recognize defendant or his car, and saw defendant pick up man then drive around circuitously through high-crime neighborhood).

[12] *Ruffin v. State*, 201 Ga. App. 792, 793 (2) (a) (412 SE2d 850) (1991).

[13] Id.

[14] Id.

[15] Id.

flagrancy of the official misconduct.[16] The question of whether consent is the product of free will or the preceding illegality must be answered under the facts of each case; no single fact is dispositive.[17]

In this case, officers transported Baker from the scene of the stop to Drescher's home. There was no significant lapse of time between the unlawful detention of Baker and the consent given by Drescher. The only intervening circumstances between the illegal stop and Drescher's consent to search her home were the discovery of drugs in Baker's truck at another location, and his statement, in response to police questioning during the illegal stop, that he might have marijuana at Drescher's house. Nothing in the record indicates that police had any other basis for believing there were illegal drugs in Drescher's home. The effect of the unlawful detention had not dissipated and the officers' conduct had no arguable legal basis.[18] Therefore, we hold that Drescher's consent was the product of the illegal detention, and that the taint of the unreasonable stop was not sufficiently attenuated.[19] The trial court erred in denying Drescher's motion to suppress evidence taken during a search of her home.

*Judgments reversed in both cases. Ruffin, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 8, 2006.

*Sexton & Morris, Ricky W. Morris, Jr.*, for appellant (case no. A05A2071).

*Steven M. Frey*, for appellant (case no. A05A2072).

*Tommy K. Floyd, District Attorney, James L. Wright III, Sandra G. Rivers, Assistant District Attorneys*, for appellee.

---

[16] *Brown v. State*, 261 Ga. App. 351, 354 (2) (582 SE2d 516) (2003).

[17] Id. at 354-355 (2).

[18] See *Bowers v. State*, 221 Ga. App. 886, 888 (473 SE2d 201) (1996) (physical precedent only).

[19] See *Pledger v. State*, 257 Ga. App. 794, 800 (572 SE2d 348) (2002).