A05A1820. DANIELS v. THE STATE.
(628 SE2d 684)

JOHNSON, Presiding Judge.

Earl Daniels, Jr., was charged by accusation with possession of marijuana with intent to distribute. He moved to suppress evidence of the drugs, but the trial judge denied the motion. Daniels waived his right to a jury trial and proceeded to a trial before the judge sitting without a jury. The judge found Daniels guilty of the charged offense and sentenced him to serve two years in confinement, followed by eight years on probation. Daniels appeals from his conviction of possessing marijuana with intent to distribute.

1. Daniels contends that the trial court erred in denying his motion to suppress evidence. The contention is without merit.

"In reviewing a ruling on a motion to suppress, we construe the evidence most favorably toward upholding the trial court's findings

and judgment. We apply a de novo standard of review to the trial court's application of the law to undisputed facts."[1] In the instant case, the pertinent facts are not in dispute.

Construed in favor of the trial court's judgment, the evidence shows that at 6:05 p.m., on October 17, 2004, a City of Conyers police officer received a telephone call from an anonymous tipster. The caller stated that he had witnessed a drug transaction and that the man who bought the drugs had them in his vehicle. According to the tipster, the buyer and a woman, both of whom were approximately 26 years old, would be traveling east toward South Carolina on Interstate 20 in a navy blue, 2002 to 2004, four-door, sport utility vehicle with 22-inch chrome wheels. The tipster also gave the officer the SUV's tag number and stated that the vehicle would go through Conyers in approximately 20 to 30 minutes, possibly up to an hour if the driver stopped for some reason.

After speaking with the tipster, the officer ran a computer check of the tag number and confirmed that it was registered to a 2002 General Motors SUV. He then went to a location beside the interstate to watch for the vehicle. Precisely at 6:30, a blue SUV with 22-inch chrome wheels passed the officer, heading east on I-20. The officer followed the vehicle and confirmed that its occupants matched the race and gender of the occupants described by the tipster and that the SUV had the same tag number given by the tipster. The officer then stopped the vehicle.

As he approached the vehicle, the officer smelled strong odors of both raw and burnt marijuana. A short time later, a second officer arrived at the scene with a drug dog, which sniffed the air around the SUV and indicated that there were narcotics in the vehicle. The officers then searched the vehicle and discovered a bag containing 7.75 ounces of marijuana under the driver's seat.

Daniels argues that the anonymous tip did not justify the stop of the vehicle and therefore evidence of the drugs found during that stop should have been suppressed. We disagree and conclude that the instant case is materially similar to and controlled by the Supreme Court's decision in *Alabama v. White*.[2]

In *White*, the police received an anonymous telephone tip that a woman would leave an apartment at a particular time in a brown station wagon with a broken taillight, that she would go to a particular motel, and that she would have cocaine in a brown attaché case.[3] Officers went to the apartment building and saw a brown station

---

[1] (Citations omitted.) *Leon-Velazquez v. State*, 269 Ga. App. 760 (605 SE2d 400) (2004).
[2] 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990).
[3] Id. at 327.

wagon with a broken taillight in the parking lot.[4] They saw the woman leave the building with nothing in her hands, get into the station wagon and drive the most direct route toward the motel. Before reaching the motel, they stopped the car.[5]

The Supreme Court held that the anonymous tip, as corroborated by the officers, exhibited sufficient indicia of reliability to justify the investigatory stop of the car.[6] In reaching that holding, the Court noted that the anonymous tip contained a range of details about not only easily obtained facts at the time of the tip, but also about future actions that ordinarily are not easily predicted.[7]

> What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information — a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to [the motel]. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.[8]

The anonymous tip in the instant case likewise contained not only facts easily obtained at the time of the tip, such as the make of the vehicle and the physical description of the occupants, but also predicted the future actions of those third parties. As in *White*, the tipster in the present case knew the precise time and route of travel of the occupants of the described vehicle. The tip came in at 6:05 p.m., the tipster said the particular vehicle would head east on I-20 through Conyers in approximately 20 to 30 minutes, and the officer then saw that very vehicle heading in that direction on that road 25 minutes later.

The instant case is significantly different from *Florida v. J. L.*[9] In that case, an anonymous caller told police that a young male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.[10] Officers went to the bus stop and, based solely on the tip,

---

[4] Id.
[5] Id.
[6] Id. at 332.
[7] Id.
[8] Id.
[9] 529 U. S. 266 (120 SC 1375, 146 LE2d 254) (2000).
[10] Id. at 268.

frisked a male who was wearing a plaid shirt.[11] The Supreme Court held that the anonymous tip was not sufficiently reliable and did not justify the frisk because it provided no predictive information by which the police could test the informant's knowledge or credibility.[12]

Likewise, we recently held in *Baker v. State*[13] that a tip about a purported drug transaction by an informant of unknown reliability was not sufficiently specific and did not provide adequate details predicting future behavior to justify a stop of a vehicle. In that case, the informant gave an imprecise description of the vehicle as either a Jeep or a truck that could be either green or black. The informant also gave an imprecise description of the location for the purported drug transaction as one of two completely different fast-food restaurants, both of which ultimately turned out to be incorrect. And the informant gave an imprecise time-frame for the transaction as taking place "in the near future." The only piece of the informant's tip that fit was the physical description of the suspect.

Conversely, the tip in the instant case specifically described the vehicle in question, its occupants and how the tipster knew about the illegal drugs. Moreover, the detailed tip accurately predicted the future behavior of where and when the occupants of the vehicle would be traveling. "In this instance the information provided to and corroborated by the [officer] was very detailed and included information that was not available to the general public, such as the route and time of travel."[14] Under the totality of the circumstances, we conclude that the anonymous tip, which contained predictive information and was corroborated by the officer, exhibited sufficient indicia of reliability to justify the investigatory stop of the car. The trial court therefore did not err in denying the motion to suppress.

2. Daniels claims there is insufficient evidence that he intended to distribute the marijuana. It is true that mere possession of marijuana, without more, will not support a conviction for possession with intent to distribute.[15] But additional evidence may prove such intent, including the packaging of the illegal drugs, the possession of a certain amount of money, a prior conviction for possession with intent to distribute, and expert testimony that the amount of the contraband possessed was consistent with the larger amount usually held for sale rather than for personal use.[16]

---

[11] Id.

[12] Id. at 271.

[13] 277 Ga. App. 520 (627 SE2d 145) (2006).

[14] (Citation omitted.) *Edgerton v. State*, 237 Ga. App. 786, 788 (516 SE2d 830) (1999).

[15] *Talbot v. State*, 261 Ga. App. 12, 13 (1) (581 SE2d 669) (2003).

[16] Id.

In this case, the officer who stopped Daniels testified that he has been a police officer for 11 years and has received specialized training in drug offenses, including classes on highway drug interdiction. He further testified that he has patrolled I-20 on a regular basis; that he personally has made various drug arrests on the interstate, including those involving large quantities of marijuana; that his department has made other arrests for large quantities of drugs on I-20; and that the portion of I-20 from Atlanta to South Carolina is known as a drug corridor, with Atlanta being the hub for trafficking. The officer also gave his opinion, based on his law enforcement experience, that the amount of marijuana found in Daniels' SUV is consistent with an amount used for distribution purposes rather than for personal use.

Although the officer was not formally tendered as an expert witness, the state laid the foundation for his opinion by eliciting the testimony about his experience and training in drug enforcement.[17] Moreover, Daniels never objected to the officer's opinion based on his experience.[18] This evidence allowed the trial judge to find beyond a reasonable doubt that Daniels possessed the marijuana with intent to distribute.[19]

*Judgment affirmed. Blackburn, P. J., Smith, P. J., and Bernes, J., concur. Ruffin, C. J., Barnes and Miller, JJ., dissent.*

BARNES, Judge, dissenting.

Because the anonymous tip on which the arresting officer relied to stop and search Daniels lacked sufficient inside information that was unavailable to the general public, rather than observations about Daniels' car and location that could have been determined by anyone, I must respectfully dissent from the majority opinion affirming the denial of Daniels' motion to suppress.

The majority contends that this case is materially similar to and controlled by *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990). The case is not materially similar, as the tipster in that case predicted that the suspect would leave a particular apartment at a particular time in a particular car and drive to a particular motel. The police followed the suspect from that apartment in that car along the most direct route to that motel and stopped her "just short of" the motel. Id. at 327. Thus, the tip in *White* provided a range of details about White's future actions that could not be predicted easily by the general public. Id. at 332. In this case, the tipster merely predicted that a particular car with "a black male and a black female about 26 years of age" would be heading east on I-20 and pass through Conyers

---

[17] See *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998).
[18] Id.
[19] See *Talbot*, supra; *Burse*, supra at 730-731.

in 20 to 30, or possibly up to 60, minutes, information that revealed no insider information, but only information available to any other motorist who also happened to be traveling on I-20.

The United States Supreme Court revisited the issue of an anonymous tipster's reliability in ruling on a motion to suppress in *Florida v. J. L.*, 529 U. S. 266 (120 SC 1375, 146 LE2d 254) (2000), pointing out that the fact pattern it had earlier approved in *Alabama v. White*, supra, 496 U. S. 325, was "a close case on the reliability of anonymous tips." While the facts in *J. L.* differ from the facts before us in some respects, the Supreme Court's search and seizure analysis regarding anonymous tips, particularly its clarification of *White*, is directly on point.

In *J. L.*, an anonymous caller reported to the Dade County Police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." The police went to the bus stop and saw J. L. in a plaid shirt, standing with two other African-American males. The police observed nothing suspicious but frisked J. L. and seized a gun from his pocket. Id. In affirming the Supreme Court of Florida, which held that the search was invalid under the Fourth Amendment, the Supreme Court reiterated that, to justify a brief *Terry* "stop and frisk," the police had to observe conduct that led them to conclude, based on their experience, that the person they were dealing with may be armed and dangerous. In *J. L.*, the officer's suspicion that J. L. might have a weapon was based, not on his observation, but "solely from a call made from an unknown location by an unknown caller."

> Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. The question we here confront is whether the tip pointing to J. L. had those indicia of reliability.

> In *White*, the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel. Standing alone, the tip would not have justified a *Terry* stop. Only after police observation showed that

the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. Although the Court held that the suspicion in *White* became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. We accordingly classified *White* as a "close case."

The tip in the instant case lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case. The anonymous call concerning J. L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J. L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J. L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.

(Citations and punctuation omitted.) *Florida v. J. L.*, supra, 529 U. S. at 270-271.

The tipster in the case before us provided more information than the tipster in *J. L.*, but less than the tipster in *White*. After describing the vehicle, the tipster in this case predicted that the SUV would travel on I-20 through Conyers in 20 to 30, or possibly up to 60, minutes, heading east, containing a man and a woman who were about 26 years old. The informant also stated that he had observed the driver conduct an apparent drug transaction involving cocaine and that he had observed other such transactions in the past. Before this

information can give rise to the articulable suspicion necessary to warrant a stop, it must be sufficiently corroborated.

[Cit.] The information corroborated must be of sufficient detail to *predict the future behavior of third parties* that otherwise would not be easily predicted; in other words, it must consist of inside information that is unavailable to the general public. *VonLinsowe v. State,* 213 Ga. App. 619, 621 (1) (445 SE2d 371) (1994).

(Emphasis supplied.) *State v. Davenport,* 268 Ga. App. 704, 706 (603 SE2d 324) (2004).

After he received the tip, the officer in this case waited beside I-20 to watch for the vehicle. He saw it pass around 6:30, 25 minutes after the call, and pulled behind it to verify the tag number and the occupants' gender and race. The officer could not, however, verify the ages of the people in the car before the stop. He initiated a traffic stop solely based on the information provided by the anonymous caller, because the driver committed no traffic violations that would authorize a traffic stop.

In its order denying Daniels' motion to suppress, the trial court held:

> In today's society, illegal drug trafficking has become more prolific than ever before. . . . In order to protect the fruits of the entire operation, individuals within the [drug] network are quick to take retaliatory action against anyone they even suspect of being a police informant, even when the informant's information does not relate directly to them. Thus, when a concerned citizen witnesses drug activity, the citizen faces the probability of severe and possibly life threatening retaliation by someone in the drug network if the concerned citizen relays such information to police, even if the individual the concerned citizen gives information about is successfully prosecuted and imprisoned. Because of the fear of retaliation, concerned citizens are often reluctant to reveal their identity to police. In fact, under these circumstances, if a drug informant gives his name, the information he imparts might be more suspect than that received from an anonymous tipster. Drug distributors who pass information to police on the activities of their rivals because they have a "score" to settle or a "business" opportunity to advance, are often more willing to provide their names because they have less fear of retaliation than a concerned citizen, because of their own network of criminal allies. . . . This Court must take into account the changed circumstances of our society relative to the illegal drug trade when balancing the rights of citizens driving on public roads to be free of

momentary stops against the rights of other citizens to protect their communities through the police, against the ravages of the drug trade.

The trial court concluded that "under the totality of the circumstances the anonymous tip, as corroborated, even by the illegal drugs found, exhibited sufficient indicia of reliability to justify the investigatory stop of the Defendant's vehicle."

Aside from the fact that nothing in the record supports the trial court's conclusions regarding the general reliability of anonymous tipsters over named ones, the federal and state constitutions as well as the rulings of the United States Supreme Court and our state's appellate courts protect our citizens' right to be free from unreasonable searches and seizures and provide no framework for the trial court's balancing of priorities.

As the United States Supreme Court held,

[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed. 1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likelihood of criminal activity, which is central in anonymous-tip cases).

*Florida v. J. L.*, supra, 529 U. S. at 272.

Similarly, the tip in this case only predicted that the vehicle would be driving on the highway passing through Conyers in 20 to 30, or possibly up to 60, minutes, information that does not establish its reliability in its assertion of legality, but only tended to "identify a determinate person." *Florida v. J. L.*, supra, 529 U. S. at 272. "The information provided here was simply not the kind of predictive 'inside information' about alleged criminal activity that can be meaningfully corroborated and that is necessary to support an investigative stop." (Citation omitted.) *Baker v. State*, 277 Ga. App. 520 (627 SE2d 145) (2006); accord *Rucker v. State*, 276 Ga. App. 683, 684 (624 SE2d 259) (2005). "Anyone could have predicted the facts here because they involved conditions presumably existing at the time of the call. Thus the tip, as corroborated, was not sufficiently reliable to

justify the investigatory stop of [Daniels'] vehicle." Id. (reversing trial court's denial of motion to suppress after search and seizure based on tip from known informant of unknown reliability). The tipster's information in this case regarding "[Daniels'] race, the description of [his] vehicle, [his] license number, etc., was information available to any member of the motoring public, as was the fact that [he] was heading toward [Conyers] on Interstate [20] prior to the time [the officer] spotted [him]." *VonLinsowe v. State*, supra, 213 Ga. App. at 621.

Moreover, we note that only two pieces of information were provided that would not have been available to the general motoring public on I-20: the age of the SUV occupants, which was not corroborated before the stop; and that the anonymous source observed the driver buy two kilos of cocaine and put them in his SUV, which was false because no cocaine was found. Although the trial court held that the illegal drugs in Daniels' car corroborated the tip, this is neither relevant nor true. It is not relevant because information obtained after the police stopped and searched Daniels' car does not justify their stopping him in the first place (*State v. Davenport*, supra, 268 Ga. App. at 707), and it is untrue because the officers did not find cocaine, as the tipster predicted, but marijuana.

During Daniels' argument on his motion to reconsider the trial court's denial of his motion to suppress, the trial court noted that the officer did all that he could do to corroborate the information from the anonymous tipster in this case. Even if I were to agree that the officer did all that he could do, this should not change the result. The information regarding the reported drug transaction and the tipster's familiarity with such transactions could not be corroborated, and thus provided no reasonable articulable suspicion justifying a *Terry* stop. The solution is not to admit the evidence, but to accept that the information provided by some tips is insufficient to justify a traffic stop.

For these reasons, I respectfully dissent from the majority opinion.

I am authorized to state that Chief Judge Ruffin and Judge Miller join in this dissent.

DECIDED MARCH 16, 2006 — 

*Vaughn & Leggett, John C. Leggett,* for appellant.
*Richard R. Read, District Attorney, Kirk M. Thomas, Assistant District Attorney,* for appellee.