## A09A0342. ADKINS v. THE STATE.
### (679 SE2d 793)

ADAMS, Judge.

Rebekah Jeneen Adkins was convicted on one count of possession of methamphetamine. On appeal, she asserts that the trial court erred in denying her motion to suppress the evidence that led to her conviction.

In the early morning hours of August 25, 2007, two officers from the Henry County Police Department responded to a call reporting a suspicious white vehicle parked with its lights off in a neighborhood cul-de-sac. The caller reported that two people were inside the vehicle. The caller reported that the vehicle was suspicious because there was rarely any traffic in that area. Upon their arrival on the scene, police found no car in the cul-de-sac, but the officers observed a white Cadillac pulling away from the area, with one person inside. One of the officers initiated a traffic stop, and Adkins, who was the Cadillac's sole occupant, immediately pulled over. Adkins produced a valid Georgia driver's license and told the officers that she was in the area to drop off her boyfriend at his parents' house. She explained that they sat in the car with the lights off because his parents were inside sleeping. When her boyfriend got out of the car, she left to return home. The officer stated that during this exchange, Adkins was visibly shaking and would not maintain eye contact with him.

When the officers ran a check on Adkins' license, they discovered that she was on active probation, which Adkins explained was for possession of methamphetamine. She admitted that as a condition of probation she was required to submit to a search and to provide a specimen. Adkins told officers that she had no narcotics with her and gave them consent to search the car. The officers subsequently discovered a small blue change purse containing a glass smoking pipe and a white pill bottle. The pill bottle contained a small clear plastic bag with a substance that was later identified as methamphetamine. When the officer showed Adkins the drugs, she said they belonged to her boyfriend, but when police called him, he denied any knowledge of them.

The officer who stopped Adkins' car testified that he initiated the stop in response to the suspicious vehicle report and to determine

why the car was in the neighborhood. He questioned Adkins further based upon both the report and her extreme nervousness.

Adkins moved to suppress this evidence on the ground that no articulable suspicion existed to support the stop and no probable cause existed to justify the search of her car. The trial court agreed that the initial stop was illegal, but ruled that the search of Adkins' car was legal. The court found that the officers could properly search pursuant to the search and specimen condition in Adkins' probation, which attenuated any connection between the illegal stop and the subsequent search of her car, citing *State v. Cooper*, 260 Ga. App. 333 (579 SE2d 754) (2003), and *Ruffin v. State*, 201 Ga. App. 792 (412 SE2d 850) (1991).[1] Accordingly, the trial court denied Adkins' motion to suppress.

The facts in this case are undisputed, and we apply a de novo review to the trial court's application of the law to the facts in considering the motion to suppress. *State v. Palmer*, 285 Ga. 75, 79 (673 SE2d 237) (2009). Neither the State nor Adkins takes issue with the trial court's finding that the initial stop was invalid, so we limit our consideration to the trial court's holding that the search was authorized by Adkins' probation condition, which attenuated any connection with the illegal stop.

In the absence of consent, police can legally search pursuant to a special condition of probation if they observe conduct reasonably suggestive of criminal activity:

> [T]here must be some conduct reasonably suggestive of criminal activity to trigger the search. It can be prompted by a good-faith suspicion, arising from routine police investigative work. Accordingly as a general rule, the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer).

*Thomas v. State*, 287 Ga. App. 163, 166-167 (1) (651 SE2d 116) (2007). See also *Fox v. State*, 272 Ga. 163, 165-166 (2) (527 SE2d 847)

---

[1] We note, however, that neither *Cooper* nor *Ruffin* involved searches conducted pursuant to a condition of probation. Rather, in both of those cases, although the defendants were illegally detained, police discovered outstanding arrest warrants and placed the defendants under arrest. This Court found that the subsequent searches incident to arrest were legal, and this legality attenuated any connection with the illegal detention. *Cooper*, 260 Ga. App. at 337 (2); *Ruffin*, 201 Ga. App. at 794-795 (2) (a).

(2000). The trial court found conduct reasonably suggestive of criminal activity to trigger the search, but did not identify any facts supporting this conclusion, and we find none in the record.

The encounter began with an anonymous call reporting two people parked in a car in an area that usually had little or no traffic. There was no evidence, however, that the neighborhood in which Adkins was parked was a high crime area, that it was illegal to park in that area or that Adkins was engaged in any other criminal activity. Moreover, "[i]t has been held that a tip from an informant of unknown reliability is generally insufficient to create a reasonable suspicion of criminal activity" unless the tip provides details of the illegal activity that the police can corroborate by observation. *Fox v. State*, 272 Ga. at 166 (2).[2] Here, in contrast, the circumstances corroborated Adkins' explanation of her presence. The caller reported two people in the car, but Adkins was alone when the police stopped her, thus supporting her claim that she was in the neighborhood to drop off her boyfriend. The only other factor cited to support Adkins' detention was her extreme nervousness, but it is well settled that nervousness alone is not enough to justify a detention or search. See *Bell v. State*, 295 Ga. App. 607 (672 SE2d 675) (2009); *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002). Moreover, police observations of Adkins' nervousness arose directly from the illegal stop. Accordingly, we find that the condition of probation was not alone sufficient to justify Adkins' detention and the subsequent search.

Nevertheless, Adkins consented to the search, and we must also consider whether that consent was valid or whether it was tainted by the illegal stop. "In order to justify a warrantless search on the grounds of consent, the State has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances." (Citations and punctuation omitted.) *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009). It is well settled that valid consent eliminates the need for either probable cause or a search warrant. Id. But "consent cannot validate a search if the consent is the product of a wrongful detention." (Citation and punctuation omitted.) *State v. Lanes*, 287 Ga. App. 311, 313 (651 SE2d 456) (2007). We must determine, therefore, whether the evidence in this case was obtained "by exploitation of [the illegal stop] or instead by means sufficiently distinguishable to be purged of the primary taint. Thus, even if evidence would not have been

---

[2] Additionally as in *Fox*, the officer in this case "did not attempt to contact a probation officer for input on [Adkins'] probation, did not involve a probation officer in the actual search, and appears to have conducted the search solely for law enforcement purposes rather than probationary purposes." *Fox*, 272 Ga. at 167, n. 16.

discovered but for the illegal police conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed." (Footnotes omitted.) *Baker v. State*, 277 Ga. App. 520, 523 (2) (627 SE2d 145) (2006). In making this determination, we consider "the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct." (Footnote omitted.) Id. at 523-524 (2).

Here, the police had no valid basis for initiating a stop of Adkins' car. As a result of that illegal stop, they determined that Adkins was on probation, and without any evidence of criminal activity, they illegally detained her while requesting consent to search. Considering the totality of these circumstances, we find that "the taint of the unreasonable stop was not sufficiently attenuated." (Footnote omitted.) *Baker*, 277 Ga. App. at 524 (2). Compare *Brooks v. State*, 285 Ga. at 426 (probationer's consent to search his home was valid where there was no allegation that officers' entry onto his property was unauthorized and police previously had received two tips that probationer was involved in illegal conduct). Accordingly, the trial court erred in denying Adkins' motion to suppress, and we reverse.

*Judgment reversed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED JUNE 5, 2009.

*Amanda R. Batchelor*, for appellant.

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.