A09A0465. PRINCE v. THE STATE.
(682 SE2d 180)

SMITH, Presiding Judge.

Theresa Prince appeals from her convictions for possession of methamphetamine with intent to distribute and trafficking in methamphetamine. Following the denial of her motion for new trial, she appeals, asserting several claims of error. We find no merit to her claims and affirm.

The evidence showed that Theresa Prince and her son Christopher Prince lived at the same residence and that they were both on probation. Christopher signed a Fourth Amendment waiver as a special condition of his probation. The waiver required that Christopher

> shall submit to a search of [ ]his person, vehicles, houses, papers, and/or effects as these terms of the 4th Amendment . . . [are] defined by the Courts at any time with or without a search warrant whenever requested to do so by the Probation Officer or any Law Enforcement Officer and specifically consents to the use of anything seized as evidence in any judicial proceedings.

On September 8, 2005, Officer Melody Wood, chief probation officer for the Enotah Circuit, received information from a confidential informant of unknown reliability that Christopher was "using and dealing drugs." The informant was another probationer assigned to Wood's office who had been convicted of a felony. Wood shared this information with Christopher's probation officer, Greg Tompkins. Officer Mitchell Salain of the Appalachian Drug Task Force testified that Tompkins called him and told him "about some information that he had received in reference to Christopher."

Salain testified that he also received information about a second tip from Tompkins. He stated that Tompkins called him and told him that a different probation officer had informed Tompkins about a tip she had received that Christopher was dealing drugs at "Ronald Prince's father's house." Tompkins received this information five days after he received the information from Wood. Salain stated that

he had no information concerning this informant's identity or reliability.

On September 20, 2005, based on the information provided to Salain and Christopher's Fourth Amendment waiver, Salain and three other officers went to Christopher and Theresa Prince's residence to conduct a search. The front door of the residence was open, leading Salain to believe that someone was at home. Two officers approached the front door of the home while two other officers went to a side door. As the two officers approached the front door, they observed Theresa looking at them through a front window as they walked past it. The officers knocked on the front door and announced themselves. They knocked several times, but no one answered the door. Salain then heard the sound of someone running through the residence. He notified the officers positioned at the side door that they "heard someone running through the trailer and for them to look out for anything coming out the back."

One of the officers testified that his role that day was "to help search if we made entry into the residence, as well as to guard the rear of the residence." When they arrived, he went to the very back of the residence and looked toward the front door and left rear corner of the trailer. He "[l]ater found out there was [a door] on the . . . left-hand side of the residence." While standing in this location, he heard "movement," opened the side door and then saw an arm come out from the residence and drop two bags onto a wood ramp leading to a deck and side door.

The officer retrieved the smaller of the two bags which contained a "crystallized substance" consistent with methamphetamine in "ice form." After retrieving the bag, the officer heard "movement going back towards the home," looked into the side door, and saw a woman, whom he identified as Theresa, attempting to wedge herself between a video gaming machine and a wall. He then went inside, apprehended Theresa, and went back to retrieve the other larger bag he observed being dropped outside. This bag contained two small bags of methamphetamine, a spoon, a digital scale, and other baggies. The contents of both bags tested positive for methamphetamine and together weighed 53.33 grams. After being apprehended, Theresa stated the drugs were "all hers." Following a bench trial,[1] the trial court found Theresa guilty of trafficking methamphetamine and possession of methamphetamine with intent to distribute.[2]

---

[1] The trial court rendered a decision on the motion to suppress and conducted the bench trial using the transcript of the hearing on the motion to suppress filed in Theresa Prince's probation revocation proceeding. In that proceeding, the trial court granted the motion to suppress and dismissed the probation revocation petition.

[2] The counts were merged for sentencing purposes.

1. Theresa asserts generally that the evidence was insufficient to sustain her convictions. But to the contrary, the evidence outlined above was sufficient to sustain her convictions for possession of methamphetamine with intent to distribute and trafficking in methamphetamine under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA §§ 16-13-31 (e) (1), 16-13-30 (b); see also *Salinas-Valdez v. State*, 276 Ga. App. 732, 734-735 (3) (624 SE2d 278) (2005).

2. Theresa enumerates as error the trial court's denial of her "motion to dismiss for violation of constitutional speedy trial violation, prosecutorial misconduct and *Cuzzort* violation." She contends that the State was responsible for removing her case from "the pre-trial and trial calendars and ensuring that the case was not allowed to be heard by the Court for more than one and one-half years after arraignment," and that the State "purposefully buried a case from all available calendars until the Judge who had previously granted [her] motion to suppress retired." Because Theresa argues only that the actions of the State violated the Georgia Supreme Court's ruling in *Cuzzort v. State*, 271 Ga. 464 (519 SE2d 687) (1999), we limit our review to that contention.[3]

In *Cuzzort*, the court held that the district attorney was without authority to independently calendar and call cases out of the order listed on the criminal trial calendar. Id. at 465 (3). OCGA § 17-8-1 provides that "[t]he cases on the criminal docket shall be called in the order in which they stand on the docket unless the defendant is in jail *or, otherwise, in the sound discretion of the court*." (Emphasis supplied.)

When questioned concerning how he managed his trial calendar, the judge testified that the district attorney's office "would not give me advice as to what should or should not be set. . . . That was my decision. I'm responsible for the calendar, ultimately, what gets on the calendar and what doesn't." He testified further that the district attorney's office did give him input based on "what [he] considered priority," and what the district attorney's office "was able to handle." When asked why he removed Theresa's case from the trial calendar, the judge explained that he did not recall specifically discussing Theresa's case with the district attorney's office, but that "if it had been on this final calendar and if the district attorney had told me that the person was on bond and we intend to reindict it, I would have taken the case off the calendar based on that."

The assistant district attorney testified that the trial judge often

---

[3] Enumerations not supported by argument may be deemed abandoned. Court of Appeals Rule 25 (c) (2). Accordingly, we will not consider Theresa's speedy trial claim.

asked for her "input as to cases that needed to be put on the calendar because they were in jail." She testified further that the judge was "particularly concerned about the oldest cases getting resolved and the jail cases and [speedy trial] demand cases." She stated that the judge asked her to help "with getting the D.A.'s office to get all of the jail cases onto that calendar." The assistant district attorney provided the judge with a list of cases, and she and the judge together decided to "remove all of the bonded and to be reindicted" cases from the September 2006 trial calendar. The assistant district attorney testified she recommended that 11 cases be removed from the trial calendar. Theresa's case was one of five cases that she recommended be removed because the judge had granted bond. She testified further that she did not recall ever specifically discussing Theresa's case with the judge. She did state, however, that all of the cases on the court's October 2006 trial calendar had priority over Theresa's case because of the order of the case number or by virtue of a demand for speedy trial.

The trial judge retired on December 31, 2006, and Theresa's case stood pending until her trial counsel made an entry of appearance and filed a motion to suppress on April 2, 2007.

"A district attorney's actions generally must rise to the level of prosecutorial misconduct or result from a structural defect in the trial mechanism before an appellate court will reverse a defendant's conviction." (Citations and footnotes omitted.) *State v. Wooten*, 273 Ga. 529, 531-532 (2) (543 SE2d 721) (2001). The record reveals that the decision to create a "priority calendar" originated with the trial judge who requested the assistance of the assistant district attorney to help determine which cases to calendar. See *Cobb v. State*, 254 Ga. App. 48, 51 (4) (561 SE2d 124) (2002) (finding no *Cuzzort* violation when decision to create a priority calendar was made by trial court). The assistant district attorney did not independently calendar the cases nor call them for trial. Under these circumstances, there was no violation of *Cuzzort*.

3. Theresa argues that the court erred in denying her motion to suppress evidence of the methamphetamine and her statements following her apprehension. She contends that officers did not have a reasonable and articulable suspicion of criminal activity in her home and that the informants were unreliable. She argues further that the State failed to prove that Christopher Prince made a knowing and intelligent waiver of his Fourth Amendment rights. The trial court concluded that Christopher Prince's Fourth Amendment waiver had not been challenged, that a search was never executed because the officers' presence at Theresa's home was a first-tier encounter, and that the intended search was supported by reasonable suspicion.

In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

(Citation, punctuation and footnote omitted.) *Schramm v. State*, 286 Ga. App. 156, 158-159 (4) (648 SE2d 392) (2007).

(a) The record reveals that officers did not obtain evidence of the contraband pursuant to a search. We must therefore determine only whether the officers were lawfully at the side door of the Prince home when they observed the contraband in plain view. And because our analysis is dependent upon the validity of Christopher's Fourth Amendment waiver, we first address that issue.[4]

Citing *Fox v. State*, 272 Ga. 163 (527 SE2d 847) (2000), Theresa asserts that the State failed to prove that Christopher made a knowing and intelligent waiver of his Fourth Amendment rights. But that case is distinguishable. In *Fox*, a probation officer told Fox, after he had already been sentenced and outside the presence of his attorney and the court, that the waiver of his Fourth Amendment rights was a condition of his probation. Id. at 164-165 (1). The record demonstrated that it was the first time the condition of probation was discussed with Fox. Id. The court concluded that under the circumstances, the waiver of Fox's Fourth Amendment rights was not valid. Id.

In this case, the State presented evidence that Christopher validly waived his Fourth Amendment rights when it introduced into evidence the waiver form signed by him. Christopher was represented by counsel when he signed the form which was also signed by his attorney. The form reveals that in addition to other special conditions of probation, each individually indicated by check marks, Christopher agreed to submit to a search of his person, "vehicles, houses, papers, and or effects" at any time whenever requested to do so by a probation officer or any law enforcement officer.[5]

The State therefore met its initial burden of providing prima facie evidence of Christopher's voluntary waiver of his Fourth

---

[4] Although the trial court found that Theresa did not challenge the validity of Christopher's Fourth Amendment waiver, the record reveals that she raised the issue in her letter brief submitted to the court prior to its ruling on the motion to suppress. And we note that Theresa has standing to challenge the validity of a waiver which gives consent for a warrantless search of the home she shared with Christopher. See generally *Sterling v. State*, 267 Ga. 209, 214 (11) (477 SE2d 807) (1996).

[5] No sentencing transcript was introduced.

Amendment rights. See also *Beasley v. State*, 204 Ga. App. 214, 216 (1) (419 SE2d 92) (1992) (State's burden to show defendant freely and voluntarily consented to warrantless search); compare *Jones v. State*, 282 Ga. 784, 786-787 (1) (a) (653 SE2d 456) (2007) (State failed to show any law, legally authorized regulation, or sentencing order showing waiver of Fourth Amendment rights). Theresa did not argue that Christopher failed to freely and voluntarily waive his Fourth Amendment rights during any of the hearings below, and she raised the issue for the first time in her letter brief to the court just prior to the court's ruling on the motion to suppress. Under these circumstances, we cannot say that the State had the burden to establish anything further with regard to the validity of the waiver. See, e.g., *Thompson v. State*, 294 Ga. App. 768, 771 (3) (670 SE2d 226) (2008) (where defendant did not challenge validity of guilty-plea waiver during sentencing, State met its initial burden of showing waiver by introducing prior guilty pleas showing defendant was represented by counsel during pleas). Therefore, on the record before us on appeal, we conclude that the State provided unrebutted evidence of a valid waiver. Compare *Jones*, supra, 282 Ga. at 786-787 (1) (a) (warrantless search condition was not checked on sentencing form).

(b) We now address the question whether the intended search was reasonable under the Fourth Amendment.

> A search conducted pursuant to a special condition of probation need not be made as a routine incident of the probation supervision process. The rule is that there must be some conduct reasonably suggestive of criminal activity to trigger the search. It can be prompted by a good-faith suspicion, arising from routine police investigative work. Accordingly as a general rule, the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, *that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer).*

(Citation, punctuation and footnote omitted; emphasis supplied.) *Rocco v. State*, 267 Ga. App. 900, 903 (2) (601 SE2d 189) (2004).[6]

---

[6] We note that the Georgia Supreme Court granted certiorari in *Brooks v. State*, 292 Ga. App. 445 (664 SE2d 827) (2008), "to consider whether reasonable grounds were required to justify the search and seizure of probationer . . . despite the existence of a validly imposed special condition of probation that prospectively waived Brooks' Fourth Amendment rights,"

Theresa argues that officers did not have reasonable suspicion of criminal activity in her home because the informant or informants were of unknown reliability. In *Rocco*, supra, we held that a search pursuant to a valid Fourth Amendment waiver "was triggered by a good-faith suspicion which arose in the course of routine investigative work, and was not conducted merely to harass Rocco." Id. at 904 (2). Although that suspicion arose from a tipster of unknown reliability, this court held that there was no evidence that the "officers acted in bad faith or in an arbitrary and capricious manner or solely to harass Rocco" and that "the officers acted reasonably in investigating information that Rocco, who was on bail for drug offenses, was still involved in drug activity." Id. at 903 (2).

As in *Rocco*, there was no evidence presented here showing that the officers acted in bad faith or in an arbitrary and capricious manner or solely to harass Christopher. See id.; *Reece v. State*, 257 Ga. App. 137, 140 (2) (b) (570 SE2d 424) (2002). And there was also no evidence that officers acted to harass Theresa, who was not the subject of the search. The officers were authorized to investigate whether Christopher possessed drugs while on probation pursuant to his valid waiver. *Rocco*, supra, 267 Ga. App. at 903-904 (2). Their presence at Christopher and Theresa's home was therefore reasonable within the meaning of the Fourth Amendment. And once lawfully at the side door of the Prince home, the officers were authorized to seize the contraband falling within their plain view. See *Peek v. State*, 239 Ga. 422, 426 (2) (238 SE2d 12) (1977); *Galbreath v. State*, 213 Ga. App. 80, 83 (2) (443 SE2d 664) (1994) (trial court properly denied motion to suppress where marijuana found in plain view while officer was in lawful vantage point).

Contrary to Theresa's argument on appeal, the Georgia Supreme Court's decision in *Fox*, supra, does not require a different result. The *Fox* court addressed the question whether the search of Fox's home, based upon an *invalid* Fourth Amendment waiver, was reasonable.[7] As we have held that Christopher's Fourth Amendment waiver was *valid*, the reasoning in *Fox* is inapplicable here.[8]

---

but concluded that it was not an appropriate case to address the issue. *Brooks v. State*, 285 Ga. 424 (677 SE2d 68) (2009). In his special concurrence, Justice Melton asserted that reasonable grounds are not necessary in such a circumstance. Id.

[7] See Justice Carley's concurrence in *Fox*, supra, 272 Ga. at 167 ("The issue of the 'reasonableness' of the search of Fox's home by the deputy sheriff arises only because the waiver was ineffective."). Ordinarily, a search by a police officer must be supported by a search warrant, consent, or exigent circumstances. See, e.g., *Boldin v. State*, 282 Ga. App. 492, 495 (3) (639 SE2d 522) (2006).

[8] This court recently issued an opinion involving a valid Fourth Amendment waiver and an anonymous tip without discussing whether police acted in bad faith or in an arbitrary or capricious manner. *Adkins v. State*, 298 Ga. App. 229 (679 SE2d 793) (2009). But that case is also distinguishable. In *Adkins*, we held that the police had no valid basis for initiating a stop

4. Theresa contends the trial court erred in ruling on her motion to suppress because "further relitigation is barred by double jeopardy and collateral estoppel." She argues that because the first trial judge granted the motion to suppress filed in her probation revocation proceeding, the parties had a full and fair opportunity to "litigate" the issue and the second trial judge, presiding over this case, is estopped to "overrule" the first trial judge.

"In *Ashe v. Swenson*, 397 U. S. 436 (90 SC 1189, 25 LE2d 469) (1970), the U. S. Supreme Court held that the doctrine of collateral estoppel is embodied in the guarantee against double jeopardy." *Dorsey v. State*, 251 Ga. App. 640, 641 (1) (a) (554 SE2d 278) (2001). A defendant's failure to file a written plea in bar prior to the second proceeding, however, generally waives the right to later raise a challenge on procedural double jeopardy grounds. *Alexander v. State*, 279 Ga. 683, 685 (2) (b) (620 SE2d 792) (2005). Here, Theresa first raised her double jeopardy/collateral estoppel ground in a motion for reconsideration of the trial court's denial of her motion to suppress. Because she did not file a plea in bar, Theresa has waived this issue for review on appeal. Id.

*Judgment affirmed. Phipps, J., concurs. Bernes, J., concurs and concurs in judgment only as to Division 4.*

DECIDED JULY 15, 2009.

*Jeffrey L. Wolff*, for appellant.
*N. Stanley Gunter, District Attorney, Cathy Cox-Brakefield, Assistant District Attorney*, for appellee.

---

of the defendant's car on the anonymous tip alone, and that officers only later discovered that she signed a Fourth Amendment waiver as a condition of her probation and illegally detained her (without evidence of criminal activity). The court held that "the taint of the unreasonable stop was not sufficiently attenuated" by the belated discovery of the waiver. Id.