## A03A2121. PIKE v. THE STATE.
(594 SE2d 753)

ADAMS, Judge.

Phillip Dorsey Pike was convicted in a bench trial of trafficking in methamphetamine, possession of marijuana, and possession of a firearm by a convicted felon. He now appeals the trial court's denial of his motions to suppress evidence seized by police. We affirm.

> On appeal from a motion to suppress, the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight accorded their testimony rest with the trier of fact. Thus, the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous.

(Punctuation and footnotes omitted.) *Sanders v. State*, 247 Ga. App. 170 (543 SE2d 452) (2000).

The evidence at the hearing on the motion to suppress and at trial showed that Cobb County police responded to an emergency domestic violence call in the early morning hours of April 1, 2000. When Officer Lester Maddox and his partner arrived at the scene, Greg Pike was waiting outside and he appeared "quite upset." Pike said that he had been in an argument with his brother, Phillip Pike. During the argument, a window had been broken either by Phillip or his girlfriend, Amanda Dooley. Greg told the officers that he owned

---

the house and he wanted Phillip to leave. Greg led the officers into the house and showed them the room where Phillip was staying. Because the electricity to the house had been turned off, there were no lights on, and the officers had to use their flashlights to see. The door to Phillip's room was closed and had a deadbolt lock on it. The officer was unsure whether the door was locked, however, because he never tried the door.

The officers knocked on the door, and initially there was no response. After repeated knocking, the door was opened, revealing Phillip Pike and Dooley sitting on the bed. The officers stepped into the room to discuss the domestic dispute, and Officer Maddox testified that he then detected the odor of marijuana. After the officers noticed a partially burned marijuana joint in an ashtray, Officer Maddox asked whether the occupants had any drugs in the room. Phillip Pike said, "No," and indicated that it was his room. The officers then asked if they could search the room and Pike told them that they could search if they wanted to, but they would not find anything. Dooley also consented to a search of her purse.

During the search, the officers discovered a plastic bag with a small amount of marijuana under one side of the bed. On the other side, they found a larger bag containing a substantial amount of marijuana between the wall and the mattress. They also discovered several boxes of ammunition, a Glock magazine, a pistol magazine, two cell phones, one of which had the serial number removed, and a safe. The search of Dooley's purse resulted in the discovery of some hydrocodone pills.

The police placed Dooley and Phillip Pike under arrest. The officers searched them in connection with the arrest and discovered $811 in cash in Phillip Pike's right front pocket and a key that appeared to belong to the safe. After the officers read the pair their *Miranda* rights, Phillip Pike indicated that he did not want to talk to police. But Dooley agreed to talk to the officers. In response to police questioning, she said that Phillip used to be her boyfriend and that he used to sell drugs. She thought that the safe probably contained a gun and some drugs.

Cobb County Police Officer Yadrick Pounds transported Dooley and Phillip Pike to jail. On the way, he noticed that Pike was wiggling and squirming in the back seat of the patrol car. At the jail, Pike was subjected to a more thorough body search. During the search, officers found a small bag of white powdery substance and another bag of powdery substance wrapped up in his underwear. When Officer Pounds went back to the patrol car to retrieve Dooley, she told him that the reason Pike had been squirming in the back seat was because he was attempting to push something up under the

driver's seat of the car. When police checked the car, they found a block of methamphetamine under the seat.

In the meantime, the police obtained a search warrant and pursuant to the warrant, searched the house and opened the safe. Inside, they found several packages of syringes, one black felt bag containing a one-inch by one-inch block of marijuana, two plastic bags containing marijuana, a prescription bottle with five pills, a Glock 21 pistol, and three bags of suspected methamphetamine.

Phillip Pike and Dooley disputed this version of events at the hearing on the motion to suppress. Dooley testified that although Phillip opened his bedroom door for police after they knocked, no one gave them permission to enter the room. She stated that there was no odor of marijuana in the bedroom, and no one ever gave the officers permission to search the room, although she did consent to a search of her purse. But at Pike's trial, Dooley testified that the officers had asked for permission to search the bedroom and Phillip gave his consent. She also confirmed that Pike had tried to push something under the seat while they were riding to the jail and that she told Officer Pounds about it.

Phillip and Greg Pike testified that Greg Pike was buying the house, but Phillip paid one-half the mortgage in rent. Both brothers testified that Greg did not have a key to the deadbolt lock on Phillip's door. Phillip testified that he opened the door to police because they were "about to beat it down." He denied that there was any odor of marijuana in the room. He said the police never asked and he never gave permission to search the bedroom.

1. Phillip Pike first contends that the trial court erred in failing to suppress the evidence seized during the officers' search of his bedroom because he contends that the officers entered his bedroom illegally. Pike asserts that the trial court erred in holding that his brother's consent to enter the residence gave the officers consent to enter the bedroom because the evidence showed that he and not his brother had exclusive control over that room.

"A warrantless search of a residence may be authorized by the consent of any person who possesses a sufficient relationship to the premises to be inspected." (Citations and punctuation omitted.) *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993). Moreover, "a warrantless search based on unauthorized consent could nonetheless be upheld if the law enforcement officer conducting the search *reasonably* (albeit erroneously) believed the consent given was valid." (Citations and punctuation omitted.) *Ford v. State*, 214 Ga. App. 284, 286-287 (3) (447 SE2d 334) (1994). See also *Illinois v. Rodriguez*, 497 U. S. 177, 186 (110 SC 2793, 111 LE2d 148) (1990).

Although both Phillip and Greg Pike testified at the motion hearing that Greg did not have access to or control over Phillip's bed-

room, the evidence is undisputed that Greg Pike told the officers at the scene that the house was his and that following the dispute, he wanted his brother out. Greg Pike invited the officers into his house to investigate the dispute with his brother. He directed the police to his brother's bedroom. The officers knocked on the door, and after the door was opened, the officers entered to further investigate the domestic dispute. Under these circumstances, we find no illegal entry because "the evidence available to [the officers] at the time of the search justified one of reasonable caution in the belief that the consenting party [(Greg Pike)] had authority of the premises." (Punctuation and footnote omitted.) *Lane v. State*, 250 Ga. App. 160, 162 (1) (549 SE2d 468) (2001). See also *Turner v. State*, 246 Ga. App. 49, 52 (539 SE2d 553) (2000). And because there was no illegal entry, Phillip Pike's later consent to search the room was not tainted. See *Gibson v. State*, 261 Ga. 313, 315 (5) (404 SE2d 781) (1991). Accordingly, the trial court did not err in denying Pike's motion to suppress evidence seized in this initial search.

2. Pike next asserts that the trial court erred in denying his motion to suppress the evidence seized as a result of the search warrant. He argues that the warrant was tainted by illegalities in the prior search. But as we have found that the prior search did not violate the Fourth Amendment, we find no merit to Pike's argument.

3. We similarly reject Pike's contention that the officer's subsequent search of the police car following his arrest was "fruit of the poisonous tree." Given our holding that the initial search was not illegal, Pike's argument must fail.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 12, 2004 ▮▮▮▮▮▮▮▮▮

*John A. Nuckolls*, for appellant.

*Patrick H. Head, District Attorney, H. Maddox Kilgore, Dana J. Norman, Assistant District Attorneys*, for appellee.