A03A1791. MARTINEZ et al. v. DaVITA, INC. et al.
(598 SE2d 334)

ANDREWS, Presiding Judge.

Defendants below[1] appeal from the trial court's grant of a preliminary injunction to plaintiffs DaVita, Inc. and its subsidiary, Renal Treatment Centers - Mid-Atlantic, Inc., in their action seeking monetary damages as well as injunctive relief in this dispute regarding dialysis centers in Macon, Perry, and Hawkinsville, and noncompete

---

[1] Carlos O. Martinez, M.D., his wife Concepcion Martinez, Kidney Care, Inc., Kidney Care of Perry, LLC, Martinez Business Holdings, LLP, and Martinez Management Services, LLC.

agreements signed by Dr. and Mrs. Martinez.

The trial court made the following findings of fact. Dr. Martinez is a nephrologist practicing in the Macon and surrounding areas, specializing in treatment of kidney disease. In 1993, Mrs. Martinez and Vickie Jackson, a friend, purchased an interest in Nephrology Center of Macon, Inc. from Ken Stockton. Mrs. Martinez acknowledged that Dr. Martinez gave her $50,000, which was the amount she invested in her purchase of Nephrology Center of Macon, Inc. After Stockton was fired, Mrs. Martinez and Jackson purchased his interest, with Mrs. Martinez owning 60 percent of the business and Jackson owning 40 percent. The corporate business name was changed to Kidney Care, Inc. (hereinafter referred to as the "East Macon facility"). Mrs. Martinez was the administrator of the facility and Jackson was the nurse administrator. Dr. Martinez, before and after the change of ownership, was the medical director of this facility and was, at that time, the only physician referring patients to it. Prior to making her investment, Mrs. Martinez spoke with Dr. Martinez to ensure he would remain medical director of the facility upon their purchasing it.

On August 27, 1997, Mrs. Martinez and Jackson, through Kidney Care, Inc., sold the East Macon facility to Renal Treatment Centers - Mid-Atlantic, Inc., a subsidiary of DaVita, Inc. (hereinafter "DaVita") for $4.25 million, as set out in the Asset Purchase Agreement. Mrs. Martinez acknowledged that her portion of the purchase price went into a joint account with Dr. Martinez. As part of the sale, that same day, Mrs. Martinez signed a covenant not to compete prohibiting her, along with Kidney Care, Inc. and Jackson, from being directly or indirectly involved with any dialysis facility within a forty-mile radius of the East Macon facility for ten years. Also signed that day by Dr. Martinez was the Medical Director Agreement between him and DaVita for the East Macon facility. Execution of the Asset Purchase Agreement was expressly conditioned upon Dr. Martinez's execution of this Medical Director Agreement, and the Medical Director Agreement was contingent upon execution of the Asset Purchase Agreement.

The Medical Director Agreement contained a restrictive covenant prohibiting Dr. Martinez from directly or indirectly participating "either as principal, agent, proprietor, shareholder, director, creditor, subcontractor, administrator, physician director, medical director, officer, employee or otherwise, in any entity, trade or business other than Company [DaVita] providing 'Dialysis Services' within the 'Restricted Area.' " The "Restricted Area" was defined as any location during the term of the agreement and within forty miles of the East Macon facility for two years following termination of the agreement. "Dialysis Services" was defined as "the provision of

outpatient dialysis treatment, inpatient dialysis treatment, or dialysis equipment or supplies."

At the August 7, 2002 hearing on DaVita's request for a temporary restraining order, counsel for Mrs. Martinez acknowledged that her Covenant Not to Compete was reasonable and enforceable. Section 6 of that Covenant states that, should Mrs. Martinez breach that Covenant, DaVita "will be entitled to preliminary and permanent injunctive relief in addition to any other rights or remedies to which [it] may be entitled."

In 1999, Dr. Martinez built a dialysis facility in Perry, approximately 30 miles from Macon. On November 1, 1999, pursuant to discussions with DaVita representatives, Dr. Martinez entered into an Agreement To Provide Management Services To a Kidney Dialysis Facility with Total Renal Care Holdings, Inc. (TRCH), another DaVita subsidiary, pursuant to which TRCH would manage the Perry facility. Paragraph 8.5 provided that all prior agreements, including the August 27, 1997 Medical Director Agreement and the Covenants Not To Compete regarding the East Macon facility, remained in full force. In a "carve out" provision, it provided that Dr. Martinez's ownership and operation of the Perry facility and provision of medical director services to it "shall not be deemed a violation of the noncompete provisions of the Medical Director Agreement or the Covenants." The agreement contained a call option pursuant to which, upon a certain patient count being achieved at the Perry facility, i.e., a "Trigger Event," DaVita would have the right to exercise an option to buy it from Dr. Martinez for 90 percent of the fair market value of the facility's assets.

In 2001, Dr. Martinez constructed, owned, and operated the Hawkinsville dialysis facility. Although Dr. Martinez believed that this facility was more than 40 miles from the East Macon facility, it was between 38.35 and 38.38 miles from it and, therefore, in violation of the noncompete covenants. At various times since the opening of the Hawkinsville facility, Dr. Martinez has served as medical director and assistant medical director of the facility. At all times, Dr. Martinez has owned the real estate upon which the facility is located.

Dr. and Mrs. Martinez operated their many limited liability companies, limited liability partnerships, holding companies, and trusts as if they were one. Both acknowledged, for example, that the Hawkinsville facility did not pay any rent to Dr. Martinez, its owner, for four months, did not pay him for his services as medical director and assistant medical director, did not pay Mrs. Martinez for working as facilities administrator, and that Dr. Martinez's Macon office paid for employee services provided to the Hawkinsville facility.

When DaVita advised Dr. Martinez of its intent to enforce the noncompete covenant regarding the Hawkinsville facility, Dr. Martinez transferred the Hawkinsville facility, with the exception of the real estate, to Mrs. Martinez for no consideration. Thereafter, Mrs. Martinez transferred it back to Dr. Martinez so that it could be transferred again to a number of different partnerships and limited liability companies ultimately controlled by Isabel Sanchez Barbero, Mrs. Martinez's sister. Ms. Barbero is a citizen and resident of Spain, an attorney, and has no experience in the dialysis business. The transfer was accomplished by Ms. Barbero giving Dr. Martinez a $600,000 promissory note, the collateral for which was the entire ownership interest in the facility. Ms. Barbero then pledged certain property back to Dr. Martinez during the note's term. Ms. Barbero appointed Teresa Hodges, Dr. Martinez's office manager at his Macon doctor's office for seven years, as president of the Hawkinsville facility. The only prior connection which Ms. Hodges had with Hawkinsville was performing some billing services offsite for it.

At least seven patients transferred from the Perry facility, which DaVita managed, to the Hawkinsville facility. DaVita produced evidence that, in December 2001 or January 2002, there was a reasonable possibility that the patient census at Perry would have reached the Trigger Event, but for the opening of the Hawkinsville facility and transfer of Perry's patients to it.

Dialysis Corporation of America (DCA) made an offer to purchase the Perry facility from Dr. Martinez for a price much higher than DaVita believed to be its fair market price. Dr. Martinez then gave DaVita the opportunity to meet DCA's offer, precipitating DaVita's motion to enjoin its sale to DCA and enforce the noncompete provisions regarding it and the Hawkinsville facility.

In the sole enumeration of error, defendants contend that the trial court erred in granting the interlocutory injunction because the trial court should have used the strict scrutiny standard to evaluate Dr. Martinez's noncompete clause in what they contend was an employment contract, the geographical territory in Dr. Martinez's noncompete clause is unreasonably broad and unenforceable regardless of the level of scrutiny, and a tolling provision in Dr. Martinez's Medical Director Agreement for the East Macon facility is unreasonable under the strict scrutiny standard.[2]

A trial court may grant an interlocutory injunction "to maintain the status quo until a final hearing if, by balancing the relative equities of the parties, it would appear tha' the equities favor the

---

[2] No argument regarding the tolling provision was made below and it will not be considered here for the first time. *City of Warner Robins v. Rushing,* 259 Ga. 348, 349 (381 SE2d 38) (1989).

party seeking the injunction. [Cits.]" *Outdoor Advertising Assn. of Ga. v. Garden Club of Ga.*, 272 Ga. 146, 147 (1) (527 SE2d 856) (2000). " 'Generally, the trial court has broad discretion under OCGA § 9-5-8 in deciding whether to grant a request for an interlocutory injunction. (Cit.)' *Atlanta Dwellings v. Wright*, 272 Ga. 231, 233 (527 SE2d 854) (2000)." *Byelick v. Michel Herbelin USA*, 275 Ga. 505, 506 (1) (570 SE2d 307) (2002). The exercise of this discretion will not be interfered with in the absence of manifest abuse. *Slautterback v. Intech Mgmt. Svcs.*, 247 Ga. 762, 766 (a) (279 SE2d 701) (1981).

The trial court, in a thorough and well-reasoned order, concluded that Dr. Martinez's noncompete clause was given as part of an asset sale and, therefore, was examined using the most lenient standard applicable to the sale of a business or, alternatively, at least subject to the mid-level standard of scrutiny applicable to a professional contract, instead of the strictest standard applicable to employment contracts. We agree.

Under Georgia rules of contract construction, where multiple documents are executed at the same time in the course of a single transaction, they should be construed together. OCGA § 24-6-3 (a); see *Hardin v. Great Northern Nekoosa Corp.*, 237 Ga. 594, 597 (229 SEd 371) (1976). The trial court concluded that "Dr. Martinez was integral to the continued success of the East Macon facility, and his execution of the East Macon Medical Director Agreement was integral to the execution of the Asset Purchase Agreement." The trial court therefore correctly evaluated the Asset Purchase Agreement, the Covenant Not to Compete, and the Medical Director Agreement, all signed August 27, 1997, together as related to the sale of a business. *Hudgins v. Amerimax Fabricated Products*, 250 Ga. App. 283, 285 (1) (551 SE2d 393) (2001).

The trial court then, again correctly, applied the least strict standard to analyzing the noncompete covenants. *West Coast Cambridge, Inc. v. Rice*, 262 Ga. App. 106, 108 (1) (584 SE2d 696) (2003).

As stated in *Watson v. Waffle House*, 253 Ga. 671, 672 (2) (324 SE2d 175) (1985),

> The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing. [Cit.]

See also *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 290 (1) (498 SE2d 346) (1998) (less strict standard also applied to partnership agreements).

Alternatively, the trial court correctly concluded that, even if not part of the sale of a business, Dr. Martinez's East Macon Medical Director Agreement was a "professional contract" in which the parties had equal bargaining power, making the covenant subject to at least the "middle level of reduced scrutiny accorded [such] professional contracts." *Keeley v. Cardiovascular Surgical Assoc.*, 236 Ga. App. 26, 30 (4) (510 SE2d 880) (1999). See also *Saxton v. Coastal Dialysis &c.*, 220 Ga. App. 805, 808-809 (470 SE2d 252) (1996).

Whether the noncompete covenant is reasonable is a question of law for the court. See *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (422 SE2d 529) (1992). In order to make this determination, Georgia courts use a three-factor test as a helpful tool, analyzing the covenant's duration, territorial coverage, and scope of restricted activity measured against whether the restrictions of the seller protect the purchaser's (DaVita's) legitimate business interests, the value of the business, and its good will. *Hudgins*, supra.

Here, the duration of Dr. Martinez's noncompete clause is the term of the agreement plus two years following its termination and is reasonable. "[C]ovenants not to compete made in conjunction with the sale of a business may be unlimited as to time (so long as the buyer remains in business) and still be valid. [Cits.]" *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 98 (2) (259 SE2d 47) (1979); see also *Hood v. Legg*, 160 Ga. 620, 627 (128 SE 891) (1925).

Dr. Martinez argues that the noncompete's restriction that he may not conduct dialysis in "any [other] location" while medical director of the East Macon facility is overbroad. As the trial court concluded, however, this "global" provision is not at issue here because the Hawkinsville facility is within the 40-mile radius of the East Macon facility and the Perry facility, the one DaVita is trying to protect, is within 20 miles of the Hawkinsville facility.

Further, even if this Court were to conclude that the "any location" provision is unreasonable, because the Medical Director Agreement was part of the sale of a business, that provision would be " 'blue pencil[ed],' " leaving the remainder of the noncompete clause in force. *Jenkins v. Jenkins Irrigation*, supra at 100 (3); *Hudgins v. Amerimax Fabricated Products*, supra.

Finally, the scope of activity restricted, operation of a competing dialysis center, is reasonable. See, e.g., *Farmer v. Airco, Inc.*, 231 Ga. 847 (204 SE2d 580) (1974). Dr. Martinez is not restricted in any way from practicing nephrology in any location, only in operating a dialysis center in direct competition with DaVita.

There was no error in the trial court's granting of an interlocutory injunction preserving the status quo until the final hearing in this case. *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322 (320 SE2d

170) (1984); *Byelick v. Michel Herbelin USA,* supra; *Slautterback v. Intech Mgmt. Svcs.,* supra.
Judgment affirmed. Barnes and Adams, JJ., concur.

DECIDED MARCH 17, 2004 —
RECONSIDERATION DENIED APRIL 2, 2004.

*James, Bates, Pope & Spivey, Thomas C. James III,* for appellants.
*Sell & Melton, Kevin T. Brown, Joseph W. Popper, Jr.,* for appellees.