## S10A1030. HERRERA v. THE STATE.
(702 SE2d 854)

THOMPSON, Justice.

Appellant Ernesto Domingo Herrera was convicted of malice murder, felony obstruction of a law enforcement officer and fleeing to elude arrest, in connection with the shooting death of Osvaldo

Navarro.[1] He appeals, asserting, inter alia, the trial court erred in refusing to suppress hospital records showing he used drugs on the day in question. Finding no error, we affirm.

Viewing the evidence in a light favorable to the verdict, we find the following: Herrera and the victim lived together in the victim's house. They quarreled throughout the day. They went to a bar together in the evening, but left in a taxi. Later, Herrera borrowed a pistol from his father-in-law. He went back to the victim's house to get his vehicle; he put the pistol in his pants.

The victim was shot in front of his house. When the police arrived, they found the victim on the ground; they did not find a knife on or near his person. The victim was rushed to the hospital, but did not survive his injuries. An autopsy showed that two bullets entered the victim's lower back and exited through the front of his body.

Herrera fled the victim's house in his vehicle, and the police gave chase. Herrera was injured when his vehicle crashed, and he, too, was admitted to the hospital. Because he gave a urine sample which tested positive for drugs, the sample was sent to a lab for further testing. The test revealed the presence of amphetamine, methamphetamine and cocaine metabolites.

Herrera told police the victim threatened him with a knife earlier in the day and he believed the victim was going to attack him with a knife when he returned to the victim's house. Hospital personnel found a folding knife with a three-inch blade in the victim's pocket along with a blade of grass and turned that evidence over to police. The knife had a scant trace of blood on it.

1. The evidence was sufficient to enable any rational trier of fact to find that Herrera did not act in self-defense and that he was guilty beyond a reasonable doubt of malice murder, obstruction and fleeing. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Holmes v. State*, 273 Ga. 644, 645 (1) (543 SE2d 688) (2001). Whether the State disproved Herrera's claim of self-defense was a question for determination by the jury, not this Court. *Holmes*, supra, citing *Russell v. State*, 267 Ga. 865, 866 (1) (485 SE2d 717) (1997).

---

[1] The crimes occurred on April 14, 2007. Herrera was indicted on September 27, 2007, and charged with murder, felony murder, aggravated assault, aggravated assault upon a peace officer and fleeing to elude arrest. Trial commenced on July 15, 2008. The jury returned its verdict on July 18, finding defendant guilty on all counts (except aggravated assault upon a peace officer; instead it found defendant guilty of the lesser included offense of obstruction of an officer by offering violence). The trial court sentenced defendant to life for murder, five years for obstruction of an officer, and 12 months for fleeing to elude. Herrera's timely filed motion for a new trial was denied on February 5, 2010. Herrera filed a notice of appeal on February 17, 2010. The case was docketed in this Court for the April term and orally argued on June 14, 2010.

2. A search warrant was issued for Herrera's hospital records which showed that he used drugs on the day in question. The affidavit for the warrant was based primarily on the statements of Herrera's wife who said he used drugs and was addicted to methamphetamine. However, the affidavit did not include facts that would have undercut the reliability of the statements made by Herrera's wife: i.e., that Herrera and his wife were estranged, that Herrera told his wife he stopped using drugs, and that Herrera's father-in-law said Herrera did not appear to be under the influence on the night in question. Moreover, the affiant failed to corroborate the information given to him by Herrera's wife. Based on these omissions, Herrera contends that the affidavit failed to establish probable cause to search Herrera's medical records. We disagree.

On appeal of the denial of a motion to suppress, the evidence is to be construed to uphold the findings of the trial court unless they are determined to be clearly erroneous. *Smith v. State*, 281 Ga. 185 (2) (640 SE2d 1) (2006). On its face, the affidavit demonstrated a fair probability that evidence of Herrera's drug use would be found in the hospital records. If an affidavit contains omissions, " 'the omitted truthful material (must) be included, and the affidavit (must) be reexamined to determine whether probable cause exists to issue a warrant.' [Cit.]" *Carter v. State*, 283 Ga. 76, 77 (656 SE2d 524) (2008). The alleged omissions in this case have the potential to impeach the statements made by Herrera's wife, but they do not eliminate the existence of probable cause. "The test for probable cause is not hypertechnical" but is based on " 'factual and practical considerations' " of everyday life. *Curry v. State*, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985). If the omitted material were included in the warrant, probable cause would still exist. *Carter v. State*, supra.

3. Herrera also asserts the hospital records were inadmissible because the State failed to prove the chain of custody of Herrera's urine sample. In this regard, Herrera points out that the lab director who testified at trial was not the individual who received and processed the sample at the lab. However, the lab director testified as to the procedures used to maintain the chain of custody in the lab. See *Maldonado v. State*, 268 Ga. App. 691, 693 (603 SE2d 58) (2004) (absent affirmative evidence of tampering, a crime lab and its employees are considered to be a single link in the chain of custody). The lab director added that no discrepancies in the chain of custody were noted by the crime lab employees. Thus, the State demonstrated with reasonable certainty that the substance tested was the same as that obtained. See *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999) ("When blood samples are handled in a routine manner and nothing in the record raises a suspicion that the blood sought to be admitted is not the blood tested, the blood is

admissible and the circumstances of each case need only establish reasonable assurance of the identity of the sample.") It follows that the trial court did not abuse its discretion in determining that the State laid the proper foundation for admitting the results of Herrera's urine test.

4. The lab report was admitted in evidence over Herrera's objection that it constituted testimonial hearsay and violated his right of confrontation. See generally *Melendez-Diaz v. Massachusetts*, ___ U. S. ___ (129 SC 2527, 174 LE2d 314) (2009) (admission of lab analyst's affidavit to prove material was contraband violated defendant's right of confrontation). See also *Neal v. Augusta-Richmond &c. Bd.*, 304 Ga. App. 115 (695 SE2d 318) (2010). However, in addition to the lab report itself, the lab supervisor, an expert in toxicology, testified that he developed the lab procedures and trained the staff as to how to perform the lab tests; that he supervised the employees who conducted the tests; and that, in his opinion, based on the results of the tests, Herrera tested positive for amphetamine, methamphetamine and cocaine metabolites. See *Carolina v. State*, 302 Ga. App. 40 (690 SE2d 435) (2010); *Haywood v. State*, 301 Ga. App. 717, 722 (689 SE2d 82) (2009); *Dunn v. State*, 292 Ga. App. 667, 669 (1) (665 SE2d 377) (2008). In view of the lab supervisor's testimony, any error in the admission of the lab report itself was harmless beyond a reasonable doubt. *Gay v. State*, 279 Ga. 180, 182 (2) (611 SE2d 31) (2005).

5. The victim's wife testified that she spoke with the victim by telephone on the day in question and that he told her Herrera was acting "weird" and "crazy," adding that Herrera had been talking about dead people in the victim's attic. The trial court admitted the victim's statements to his wife under the necessity exception to the hearsay rule. Herrera contends the trial court erred in admitting this testimony because it was not trustworthy. In this regard, Herrera points out that (1) the victim was under the influence of drugs and alcohol when he spoke to his wife; (2) the victim's wife was living in California and she had not seen the victim in ten weeks; and (3) the victim told an emergency room nurse that he had been using cocaine; that he and Herrera had been drinking alcohol; that they had been acting "goofy"; and that they had "made some bad decisions" and "done some stupid things."

OCGA § 24-3-1 (b) provides that hearsay evidence is admissible in "specified cases from necessity." The two requirements for the admission of hearsay under this exception are the unavailability of the declarant[2] and a circumstantial guaranty of trustworthiness. In

---

[2] This prerequisite is satisfied because the victim is deceased.

determining whether an out-of-court statement bears sufficient indicia of trustworthiness, we look at the totality of the circumstances. *Roper v. State*, 263 Ga. 201, 202 (429 SE2d 668) (1993). Whether a statement is trustworthy is a matter for the trial court's discretion. *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002).

In this case, we find that the victim and his wife were planning to sell their house and move to California. To that end, the victim's wife moved to California where she lived with her parents. However, the victim and his wife continued to speak to each other regularly by telephone, and they spoke several times on the day in question. Based on this evidence the trial court concluded that the victim and his wife maintained a confidential relationship and that the out-of-court statements were trustworthy. The trial court did not abuse its discretion in reaching that conclusion. Id.

Herrera also posits that the victim's statements were not relevant to a material fact. We disagree. The statements were relevant to show Herrera's bent of mind on the day in question. See *Thomason v. State*, 281 Ga. 429, 433 (12) (637 SE2d 639) (2006).

6. A potential juror stated he was biased against Herrera because he was Hispanic. In this regard, the juror explained that many Hispanics had moved into his former neighborhood and he felt forced to leave because of ensuing violence. He added, however, that his bias against Herrera would be "equaled out" in this case because the victim was also Hispanic. When the trial court asked the juror if he could decide this case solely on the evidence and set aside his other feelings, the juror responded "I think I can."

Herrera asserts the trial court erred in refusing to excuse the juror for cause. We disagree. The conduct of the voir dire and whether to strike a juror for cause, are within the discretion of the trial court, and the court's rulings are proper absent some manifest abuse of discretion. *Patterson v. State*, 239 Ga. 409, 411 (1) (238 SE2d 2) (1977). We find no abuse of discretion in refusing to excuse the juror in this case. A trial court is not required to excuse a prospective juror "who simply expresses reservations about her ability to set aside her personal experiences." *Byrd v. State*, 277 Ga. 554, 556 (2) (592 SE2d 421) (2004). See also *Holmes v. State*, 269 Ga. 124, 125 (2) (498 SE2d 732) (1998). Giving deference to the trial court's ruling, *Nance v. State*, 280 Ga. 125, 128 (623 SE2d 470) (2005), it cannot be said the juror had a fixed opinion of Herrera's guilt.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 2010 —
RECONSIDERATION DENIED NOVEMBER 22, 2010.

*Benjamin D. Goldberg, Michael R. McCarthy*, for appellant.

*Kermit N. McManus, District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.