## A10A2212. CURRY v. THE STATE.
(711 SE2d 314)

SMITH, Presiding Judge.

A jury found Patricia Curry guilty of possession of cocaine with intent to distribute, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Curry appeals, contending that the warrantless search of her residence was unconstitutional because the State failed to show that she agreed to a special bond condition. Because the evidence supports a finding that Curry freely and voluntarily consented to the special condition of her bond, we affirm the trial court's denial of Curry's motion to suppress.

"On appeal of the denial of a motion to suppress, the evidence is to be construed to uphold the findings of the trial court unless they are determined to be clearly erroneous." (Citation omitted.) *Herrera v. State*, 288 Ga. 231, 233 (2) (702 SE2d 854) (2010).

The evidence presented at the suppression hearing revealed that prior to the search of Curry's home, Curry had been arrested for possession of marijuana with intent to distribute, sale of marijuana, and maintaining a disorderly house. She was released from custody when she posted a bond of $30,000.

While Curry was free on bond, a confidential informant advised the Wilcox County Sheriff's Office that Curry was selling crack cocaine out of her home. The informant provided the same information to an agent with the South Central Drug Task Force. After receiving the informant's tip, the sheriff's deputy, the drug task force agent, and several other law enforcement officers conducted a warrantless search of Curry's residence. Upon entering the residence, the officers announced that the search was being conducted pursuant to the conditions of Curry's bond. Curry, however, was uncooperative with the officers and attempted to block their entry into the residence. After physically removing Curry from the residence, the officers searched the back master bedroom, where they discovered a large quantity of crack cocaine and a handgun.

Curry was arrested and indicted on charges of possession of cocaine with intent to distribute, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. She moved to suppress the cocaine and handgun, contending that the warrantless search of her residence violated the Fourth Amendment.

At the suppression hearing, the State argued that the warrantless search was justified because Curry consented to warrantless searches of her residence and person upon the request of law enforcement in a special bond condition. To support its argument that Curry had waived her Fourth Amendment rights, the State

relied upon certified copies of a bond form in a prior drug case (the "bond form") and another form titled "Special Drug Conditions of Bond" (the "special conditions form"). The special conditions form provided in relevant part: "The Defendant shall, at the request of law enforcement, consent to a search, without necessity or benefit of a search warrant, of his/her . . . residence . . . by a law enforcement officer for the detection of alcohol, drugs or controlled substances." Although the bond form and special conditions form were executed on the same day, the State introduced them as separate exhibits in the motion to suppress hearing. The forms do not cross-reference one another or contain consecutive numbering. Curry signed the bond form, but not the special conditions form. The special conditions form contains the signature of Curry's then counsel, the assistant district attorney, and most importantly, the trial judge granting the bond.[1] The State asserted that the two documents "are part and parcel the same document."

Curry did not testify in the motion to suppress hearing or present any evidence demonstrating that she did not consent to the special conditions of her bond. Instead, her counsel argued that the bond form and the special conditions form were inadequate to fulfill the State's burden of demonstrating her consent to future warrantless searches upon request of law enforcement.[2]

The trial court denied Curry's motion to suppress based, in part, upon its conclusion that Curry waived her Fourth Amendment rights as a special condition of bond. After the denial of her motion to suppress, Curry was tried before a jury and found guilty of the drug and firearm-related offenses as charged. She filed a motion for a new trial and raised again the issues related to her motion to suppress. The trial court denied her motion for new trial without explanation. This appeal followed.

On appeal, Curry argues the special conditions form was insufficient to show that she waived her Fourth Amendment rights because her signature was not on the form. We disagree.

> It is well settled that a valid consent to a search eliminates the need for either probable cause or a search warrant. In order to justify a warrantless search on the grounds of

---

[1] In her appellate brief, Curry concedes for the first time that the signature on the signature line for the "Defendant/Defendant's Attorney" on the special conditions form, which was otherwise undecipherable, was that of her attorney in the prior drug case. A different attorney represented Curry in the present case.

[2] At trial, Curry testified that she did not know about the special bond condition and denied that her attorney told her about it.

> consent, the State has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances.

(Citations and punctuation omitted.) *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009).

The State presented evidence of the special conditions of Curry's bond which Curry herself admits was signed by her counsel, and which was also signed by the trial court. The form states that "[Curry] herein specifically agrees to . . . consent to a search, without the necessity or benefit of a search warrant. . . ."

Based upon the signature of the trial judge issuing the bond on the special conditions form, the signature of Curry's counsel on the special conditions form, the statement in the special conditions form about the defendant's consent to search, the case caption on the special conditions form ("The State v. Patricia Curry"), Curry's signature on the bond form, the fact that both documents have the same handwritten date, and the presumption of regularity, we conclude that the State was not required to produce anything more to show that Curry consented to future searches upon the request of law enforcement. See *Hanifa v. State*, 269 Ga. 797, 804-805 (3) (505 SE2d 731) (1998) (evidence supported trial court determination that incriminating statement was voluntarily given where defendant's mother accompanied her to police station, signed waiver of rights form and was present during defendant's interrogation, defendant was able to read and write and understood English, and defendant was informed she was a murder suspect); *Davis v. State*, 244 Ga. App. 715, 716 (1) (536 SE2d 603) (2000) (record failed to support defendant's claim that he did not receive notice of special condition of bond where bond with his name written on it was introduced into evidence, judge who issued bond testified about custom to go over special conditions with the defendant, and bond was served on defendant).

Once the State presented the special conditions form, the burden then shifted to Curry to show any alleged irregularities, which she failed to do in the motion to suppress or at any time before trial. See *Beck v. State*, 283 Ga. 352, 354 (2) (658 SE2d 577) (2008) (presumption of regularity attaches when State introduces plea hearing transcript, docket entry or another document affirmatively showing that right was waived; burden then shifts to defendant to show irregularities). Although Curry testified at trial (*after* the trial court had denied her motion to suppress) that she was unaware that her bond had special conditions, we must assume that the trial court found this testimony not credible when it denied Curry's motion for new trial without explanation. See *Herrera*, supra, 288 Ga. at 233

(facts and credibility issues must be upheld unless clearly erroneous).

Although Curry contends that the special condition form was inadequate in the absence of her signature, OCGA § 24-6-3 (a) provides that "[a]ll contemporaneous writings shall be admissible to explain each other." And in the context of interpreting agreements, we hold that "where multiple documents are executed at the same time in the course of a single transaction, they should be construed together."[3] (Citations omitted.) *Martinez v. DaVita, Inc.*, 266 Ga. App. 723, 727 (598 SE2d 334) (2004). See also *Duke v. KHD Deutz &c.*, 221 Ga. App. 452, 452-453 (471 SE2d 537) (1996) ("contemporaneous writings should be considered even if one of the writings purports to 'contain the entire understanding of the parties hereto with respect to the transactions contemplated hereby' and even if the writings are not cross-referenced"). The bond order and the special conditions form were executed on the same day. Indeed the special conditions form alone would have no meaning separate from the bond order. The order and form should therefore be construed together. Construing these documents together, the State presented sufficient evidence to show that Curry consented to future searches upon the request of law enforcement.

Because the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous, and we must construe the evidence most favorably to the upholding of the trial court's findings and judgment, *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010), we must conclude that under the totality of the circumstances, Curry freely and voluntarily gave her consent for a warrantless search. The trial court therefore did not err in denying the motion to suppress.

*Judgment affirmed. Andrews, Mikell, Blackwell and Dillard, JJ., concur fully and specially. Barnes, P. J., and Adams, J., dissent.*

BLACKWELL, Judge, concurring fully and specially.

I agree with all that is said in the opinion of the Court, and I join it in full. I write separately only to identify an alternative basis on which some of us also would affirm the denial of Patricia Curry's motion to suppress.

The trial court in this case found that Curry agreed to the special conditions through her lawyer and that, even if she had not done so, the police officers who searched her residence acted reasonably when they relied upon the consent provision contained in the special

---

[3] See, e.g., *Williams v. City of Tifton*, 3 Ga. App. 445, 446 (60 SE 113) (1908) (explaining that a bail bond is a contract).

conditions. Implicit in the opinion of the Court is the notion that a lawyer may be authorized, at least in some cases, to waive his client's rights under the Fourth Amendment when securing her release on bond.[4] And because a lawyer sometimes may be authorized to consent to a search of his client's property, the officers in this case were entitled to rely upon the consent provision contained in the special conditions that Curry's lawyer signed.

Here, the police officers indisputably relied upon this consent provision when they searched Curry's residence, and one testified that the officers were "confident" that the special conditions were "proper." It was reasonable for the officers to believe that the special conditions had been properly executed—especially considering that they were signed by a judge of the superior court and an assistant district attorney whose signatures were known to, and authenticated by, the officers—and, therefore, that whoever signed the special conditions as the "Defendant/Defendant's Attorney" had authority to do so.

In *Illinois v. Rodriguez*, 497 U. S. 177 (110 SC 2793, 111 LE2d 148) (1990), the United States Supreme Court held that a search is reasonable when it is based on the consent of a person whom officers reasonably, but erroneously, believe has authority to consent to the search. See id. at 186 (III) (B). As the Supreme Court explained in *Rodriguez*, the Fourth Amendment does not require that officers "always be correct, but that they always be reasonable." Id. at 185 (III) (B). The existence of authority to consent to a search, the Supreme Court said, "is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." Id. at 186 (III) (B). Citing *Rodriguez*, our Court has endorsed this principle in several decisions. See, e.g., *State v. Parrish*, 302 Ga. App. 838, 840 (691 SE2d 888) (2010) ("A warrantless search based upon the consent of a third party will be deemed valid when, at the time of entry, police reasonably believe that the third party possesses common authority over the area to be searched."); *Warner v. State*, 299 Ga. App. 56, 59 (1) (681 SE2d 624) (2009) ("[E]ven if the parents in fact did not have the authority to consent to a search of Warner's bedroom, the circumstances led the

---

[4] This notion is consistent with existing Supreme Court precedent, which has held that an individual properly may waive her rights under the Fourth Amendment in a variety of ways, whether "directly or through an agent." *Stoner v. California*, 376 U. S. 483, 489 (84 SC 889, 11 LE2d 856) (1964). It also is consistent with the principle that "[a]ttorneys have authority to bind their clients in any action or proceeding by any agreement in relation to the cause, made in writing, and by signing judgments, entering appeals, and entering such matters, when permissible, on the dockets of the court." OCGA § 15-19-5.

police to reasonably believe that the parents had that authority, and therefore the search was valid."); *Pike v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004) ("[A] warrantless search based on unauthorized consent could nonetheless be upheld if the law enforcement officer conducting the search reasonably (albeit erroneously) believed the consent given was valid.") (citation, punctuation and emphasis omitted); *Ford v. State*, 214 Ga. App. 284, 286 (3) (447 SE2d 334) (1994) (en banc) (same). Because the officers were entitled to conclude that whoever signed the special conditions on behalf of Curry had authority to consent to a search, their search of Curry's residence was reasonable.[5]

There is no evidence that any of the officers had any reason to believe that Curry had not agreed to the consent provision through her lawyer.[6] Indeed, when the officers arrived at her residence, they informed Curry that they intended to conduct a search pursuant to the terms of her bond, and although she attempted to physically prevent them from conducting the search, there is no evidence that she then expressed an unawareness of the special conditions or disputed that she had agreed to them. In these circumstances, the officers were entitled to reasonably rely upon the consent provision in the special conditions, and the search of Curry's residence was, therefore, reasonable.

No one disputes that the officers reasonably believed that Curry had consented to the search, either herself or through her lawyer. Instead, Curry argues that we cannot consider the reasonable beliefs of the officers because Georgia rejects the good faith exception. See *Gary v. State*, 262 Ga. 573, 575-576 (422 SE2d 426) (1992) (rejecting good faith exception as inconsistent with statutory exclusionary rule, OCGA § 17-5-30). Curry, however, misapprehends the nature of the good faith exception and our rejection of it in Georgia. The Fourth Amendment secures individuals against unreasonable searches and seizures, and the exclusionary rule secures individuals against the

---

[5] I reject the notion that officers may never rely reasonably upon consent given in writing unless they also have face-to-face contact with the person signing the consent. While it is true, I think, that officers cannot rely upon just any piece of paper that purports to have been signed by one with authority to consent, the officers here were relying upon a court filing, the authenticity of which was indisputable. When a judge of the superior court has approved an agreement between an assistant district attorney and a defense lawyer, I think a police officer reasonably may rely—absent information to the contrary—upon the validity of the agreement and the authority of the defense lawyer to enter the agreement on behalf of his client.

[6] This fact distinguishes this case from *State v. Kuhnhausen*, 289 Ga. App. 489 (657 SE2d 592) (2008), in which this Court held that the consent of a probationer to a search of his residence did not entitle officers to search the adjacent residence of his brother, notwithstanding that the officers may genuinely have believed that they were a single residence. Any such belief, though genuine, was unreasonable because one of the officers "knew that the structure was divided into two separate residences." 289 Ga. App. at 490 (1).

use in judicial proceedings of evidence obtained in violation of the Fourth Amendment. See *Illinois v. Gates*, 462 U. S. 213, 223 (I) (103 SC 2317, 76 LE2d 527) (1983) ("The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."); see also *Arizona v. Evans*, 514 U. S. 1, 13 (115 SC 1185, 131 LE2d 34) (1995) ("[T]he issue of exclusion is separate from whether the Fourth Amendment has been violated. . . ."). The good faith exception is an exception to the exclusionary rule, not the reasonableness requirement of the Fourth Amendment or its preference for warrants. Because a search is reasonable when officers obtain the consent of a person whom the officers reasonably, but erroneously, believe is authorized to consent to the search, see *Rodriguez*, 497 U. S. at 185-186 (III) (B), such a search does not violate the Fourth Amendment. The exclusionary rule—and, therefore, an exception to the exclusionary rule—has no application when there is no violation of the Fourth Amendment. For this reason, the rejection in Georgia of the good faith exception has no bearing upon a proper resolution of this case.

Both for these reasons and the reasons set forth in the opinion of the Court, I would affirm the denial of the motion to suppress.

I am authorized to state that Judge Andrews, Judge Mikell and Judge Dillard join in this opinion.

BARNES, Presiding Judge, dissenting.

There is no evidence in the record whatsoever that Patricia Curry, who stood accused of a crime by the State but remained innocent until proven guilty, was advised of and personally agreed to a waiver of her Fourth Amendment rights as a special condition of her bond. Surely it is not the law in our State that the mere signature of an accused's counsel on a special conditions of bond form, standing alone, is sufficient to waive the accused's Fourth Amendment rights. Something more should be required in cases involving fundamental constitutional rights that are personal to the accused, and, in fact, our Supreme Court has held that an accused must receive notice of a special condition waiving her Fourth Amendment rights. The holding of the majority is inconsistent with this Supreme Court precedent emphasizing the importance of notice to the accused, and, therefore, I dissent.[7]

---

[7] I note that Presiding Judge Smith's opinion and Judge Blackwell's special concurrence both garnered the votes of a majority of the seven judges on this panel. Nonetheless, for ease of reference, I will refer throughout my dissent to Presiding Judge Smith's opinion as "the

At the suppression hearing, the State maintained that the warrantless search of Curry's residence was constitutional because she had waived her Fourth Amendment rights as a special condition of her bond. The State relied upon two distinct documents: Curry's bond agreement from a prior drug case (the "Bond Agreement") and a separate, one-page form entitled "Special Drug Conditions of Bond" (the "Special Conditions Form"). The Special Conditions Form contained language stating that the "defendant" consented to a warrantless search "of his/her . . . residence . . . by a law enforcement officer for the detection of alcohol, drugs or controlled substances." As the majority notes, the Bond Agreement and Special Conditions Form were introduced as separate exhibits by the State, were not attached to one another, were not numbered consecutively, and did not cross-reference each other or incorporate the terms of the other. Most significantly, the Bond Agreement was signed by Curry, but not the Special Conditions Form, which was signed by her attorney.

Curry argued that the Special Conditions Form was insufficient to show that she had waived her right to challenge the warrantless search of her residence, given that there was no evidence that she had notice of and personally agreed to the special bond condition waiving her Fourth Amendment rights. The trial court disagreed and denied Curry's motion to suppress. Later, at trial, Curry testified that she was never made aware of the Special Conditions Form by her attorney or anyone else.

1. *The Special Conditions Form.* In my view, the trial court erred in concluding that Curry validly waived her Fourth Amendment rights based merely upon the Special Conditions Form. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." See also Ga. Const. of 1983, Art. I, Sec. I, Par. XIII. An officer's warrantless intrusion into a person's home violates the Fourth Amendment, outside certain narrowly drawn exceptions to the warrant requirement. *State v. Ealum*, 283 Ga. App. 799, 801 (643 SE2d 262) (2007). One of those exceptions is when a defendant waives her constitutional right against warrantless searches as a special condition of her release on bond.[8] See *Rocco v. State*, 267 Ga. App. 900, 902-903

---

majority" and to Judge Blackwell's special concurrence as "the concurring opinion."

[8] Our Supreme Court has not resolved the question of whether the State still must prove that there were reasonable grounds to justify the search, even if the defendant knowingly agreed to a special condition of probation or bond waiving her Fourth Amendment rights. The Supreme Court granted certiorari in *Brooks v. State*, 292 Ga. App. 445 (664 SE2d 827) (2008), "to consider whether reasonable grounds were required to justify a search and seizure of [the]

(1) (601 SE2d 189) (2004). But to pass constitutional muster, the defendant must have notice of the special condition when entering into the bond agreement. See *Fox v. State*, 272 Ga. 163, 164-165 (1) (527 SE2d 847) (2000) (waiver of defendant's Fourth Amendment rights invalid where defendant did not receive notice of probation condition until after plea agreement was reached and sentence was announced). See also 11 Ga. Proc. Criminal Procedure § 31:28. As our Supreme Court has emphasized in the probation context, "*notice of . . . valid limitations of probationers' liberties serves an important role in making those limitations constitutionally permissible.*" (Emphasis in original.) *Jones v. State*, 282 Ga. 784, 786 (1) (a) (653 SE2d 456) (2007). See also *United States v. Knights*, 534 U. S. 112, 119-120 (122 SC 587, 151 LE2d 497) (2001) (upholding warrantless search where "[t]he probation order clearly expressed the search condition *and [the probationer] was unambiguously informed of it*") (emphasis supplied). There is no reason to think that our Supreme Court would view the need for notice as any less important to a defendant released on bond, who stands accused but not convicted of a crime.

The burden is on the State to show that Curry validly waived her Fourth Amendment rights, see *Prince v. State*, 299 Ga. App. 164, 168-169 (3) (a) (682 SE2d 180) (2009), and I do not believe that the State met its burden in the present case. The Special Conditions Form relied upon by the State was not signed by Curry, and no transcript of the bond hearing was introduced at the suppression hearing. The State presented no other evidence that Curry had notice of the Special Conditions Form and thus knowingly agreed to its terms when she entered into the Bond Agreement. Under these circumstances, the Special Conditions Form did not support a finding that Curry validly waived her Fourth Amendment rights. See *Jones*, 282 Ga. at 787 (1) (a) (reiterating that "notice is a critical consideration in determining the limits of any reasonable expectation of privacy"); *Fox*, 272 Ga. at 164-165 (1) (see supra). Compare *Prince*, 299 Ga. App. at 168-169 (3) (a) (defendant validly waived his Fourth Amendment rights where State introduced into evidence a special conditions of probation form signed by the defendant); *Hess v. State*, 296 Ga. App. 300, 301-302 (1) (674 SE2d 362) (2009) (defendant validly waived his Fourth Amendment rights where State introduced into evidence transcript of sentencing hearing in which defendant

---

probationer . . . despite the existence of a validly imposed special condition of probation that prospectively waived [his] Fourth Amendment rights." *Brooks v. State*, 285 Ga. 424 (677 SE2d 68) (2009). However, the Supreme Court ultimately concluded that it was "not the appropriate case to address that issue" and thus left for another day "the question of whether a probation search must be supported by reasonable grounds despite a Fourth Amendment waiver." Id.

was expressly informed of the probationary condition requiring him to submit to searches without a warrant).

Nevertheless, the majority asserts that a presumption of regularity attached to the Special Conditions Form and that the State thus met its initial burden of providing prima facie evidence that Curry waived her Fourth Amendment rights. The majority relies upon *Beck v. State*, 283 Ga. 352, 354 (2) & n. 3 (658 SE2d 577) (2008), in which our Supreme Court held that the State met its initial burden of showing that the defendant waived his right to counsel by introducing a trial court order in which the court made findings of fact on the waiver issue. The situation here is different, however, because the Special Conditions Form included separate signature lines for the assistant district attorney and the "Defendant/ Defendant's Attorney," thereby indicating that the assent of the parties was intended to be a precondition to the form's enforceability. I agree that the State would have met its initial burden if the signature line for "Defendant/Defendant's Attorney" had been signed by Curry. See *Prince*, 299 Ga. App. at 168-169 (3) (a). But the Special Conditions Form was signed by Curry's attorney, not by Curry herself. And, as discussed infra in Division 2, an attorney's purported waiver of a defendant's Fourth Amendment rights carries no weight in the absence of evidence that the defendant was informed of and personally agreed to the waiver.[9]

Relying upon the contemporaneous writing rule applicable in civil contract disputes, the majority further argues that the Bond Agreement and Special Conditions Form should be construed together to find that Curry waived her Fourth Amendment rights. The majority cites to OCGA § 24-6-3 (a), which provides that "[a]ll contemporaneous writings shall be admissible to explain each other,"[10] but the terms of the Bond Agreement and Special Condi-

---

[9] The majority relies upon two additional cases, *Hanifa v. State*, 269 Ga. 797, 804-805 (3) (505 SE2d 731) (1998), and *Davis v. State*, 244 Ga. App. 715, 716 (1) (536 SE2d 603) (2000), to support its conclusion that the Special Conditions Form was sufficient to waive Curry's Fourth Amendment rights. Both are inapposite. In *Hanifa*, 269 Ga. at 804-805 (3), the issue was whether a juvenile defendant who arrived with her mother at the police homicide office to give a statement had freely and voluntarily waived her right against self-incrimination. In pointing to several factors indicating that the juvenile had freely and voluntarily waived her rights, the Supreme Court indicated that the juvenile herself had read the waiver of rights form by emphasizing that she "was able to read and write and understood the English language." Id. at 805 (3). That is a far cry from the situation here, where there is no evidence that Curry ever saw or was notified of the Special Conditions Form. In *Davis*, 244 Ga. App. at 716 (1), the trial judge who conducted the bond hearing and issued the bond testified that it was his custom to go over the special conditions with defendants and that the bond was served on the defendant in that case. There was no similar testimony from the trial judge in the present action.

[10] OCGA § 24-6-3 is found in Chapter 6, "Parol Evidence Rule," of Title 24.

tions Form are not in need of any explanation or interpretation. Rather, the sole issue in this case is the constitutional one of whether Curry had notice of and personally agreed to the terms of the Special Conditions Form. Moreover, the contemporaneous writing rule is applicable only where the documents at issue were executed at the same time and in the course of a single transaction. See *Martinez v. DaVita, Inc.*, 266 Ga. App. 723, 727 (598 SE2d 334) (2004). While the dates on the Bond Agreement and Special Conditions Form are the same, there is no evidence as to the timing and sequence of when the documents were signed or when they were entered into the record. It is entirely plausible that the Bond Agreement was signed and entered into the record at the bond hearing, with the Special Conditions Form being filed into the record at a later point after the hearing had concluded, particularly since Curry signed one of the documents but not the other. In the entire absence of any testimony or other evidence from the State reflecting that the Bond Agreement and Special Conditions Form were executed at the same time in a single transaction, the contemporaneous writing rule should not be applied to find a waiver of Curry's Fourth Amendment rights.

2. *The Signature of Curry's Attorney.* In concluding that a Fourth Amendment waiver had occurred, the trial court relied upon the fact that the Special Conditions Form was signed by the attorney who represented Curry in the bond proceedings. The concurring opinion likewise suggests that the signature of Curry's attorney might be sufficient to waive her Fourth Amendment rights. The trial court and concurring opinion, however, fail to give due regard to our Supreme Court's emphasis in *Jones* and *Fox* on the need for a defendant to receive notice of a special condition waiving Fourth Amendment rights. See *Jones*, 282 Ga. at 787 (1) (a); *Fox*, 272 Ga. at 164-165 (1). Because the State presented no evidence that Curry was advised of the Special Conditions Form by her attorney or was otherwise made aware of its terms when she entered into the Bond Agreement, the State failed to meet its burden of showing that a valid constitutional waiver occurred under the reasoning of *Jones* and *Fox*.

Furthermore, "[c]riminal defendants possess essentially two categories of constitutional rights: those which are waivable by defense counsel on the defendant's behalf, and those which are considered fundamental and personal to defendant, waivable only by the defendant." (Citation omitted.) *Stinson v. State*, 279 Ga. App. 107, 110 (1) (630 SE2d 553) (2006). See *Slater v. State*, 251 Ga. App. 620, 621 (1) (555 SE2d 8) (2001). Fourth Amendment rights are clearly fundamental to a defendant and should not be relegated to

second-tier constitutional status:

> [T]he rights . . . protected by the Fourth Amendment are to be regarded as of the very essence of constitutional liberty; and . . . the guaranty of them is as important and as imperative as . . . the guaranties of the other fundamental rights of the individual citizen.

(Citation and punctuation omitted.) *Harris v. United States*, 331 U. S. 145, 150 (67 SC 1098, 91 LE 1399) (1947), overruled in part on other grounds by *Chimel v. California*, 395 U. S. 752, 768 (89 SC 2034, 23 LE2d 685) (1969). See also *Randolph v. State*, 264 Ga. App. 396, 400 (1) (590 SE2d 834) (2003) ("This Court should not read the Fourth Amendment from a perspective of impoverishment, but from the vantage point of proper respect for a fundamental right."). Fourth Amendment rights also are clearly personal to a defendant: "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." (Citation and punctuation omitted.) *Rakas v. Illinois*, 439 U. S. 128, 133-134 (II) (A) (99 SC 421, 58 LE2d 387) (1978). See *State v. Kuhnhausen*, 289 Ga. App. 489, 491 (1) (657 SE2d 592) (2008) (one brother cannot waive another brother's Fourth Amendment rights); *State v. Jackson*, 243 Ga. App. 330, 331 (533 SE2d 433) (2000) ("Fourth Amendment rights are personal in nature and may be enforced only at the instance of the person whose protection was infringed by the search and seizure."). A defendant's rights under the Fourth Amendment, therefore, fall into the second category of constitutional rights which defense counsel cannot waive simply by signing a special conditions form on the defendant's behalf, without any evidence that the defendant herself was informed of and agreed to those conditions.[11] Consequently, because there is no evidence that Curry was informed of and personally agreed to the Special Conditions Form, no valid constitutional waiver occurred in this case.

3. *The Officers' Reliance on the Special Conditions Form.* In its order denying Curry's motion to suppress, the trial court also justified the warrantless search on the ground that the officers had relied in good faith upon the Special Conditions Form in executing

---

[11] The concurring opinion cites to *Stoner v. California*, 376 U. S. 483 (84 SC 889, 11 LE2d 856) (1964), but that case does not address the relationship between a defendant and her attorney, or the extent to which an attorney can waive a defendant's Fourth Amendment rights by executing a court form, where there is no evidence that the attorney or anyone else informed the defendant of the form. The concurring opinion also cites to OCGA § 15-19-5, but that general statute does not address an attorney's authority to unilaterally waive a client's fundamental constitutional rights, a question controlled by the Georgia and United States Constitutions rather than statutory law.

the search. But "Georgia does not recognize the good faith exception to its statutory exclusionary rule because our legislature has not provided one." *Beck*, 283 Ga. at 353 (1). See OCGA § 17-5-30; *Gary v. State*, 262 Ga. 573, 575-576 (422 SE2d 426) (1992). See also *Kuhnhausen*, 289 Ga. App. at 491 (1) (Georgia's exclusionary rule required suppression of evidence discovered during warrantless search of the defendant's residence, even though officers had good faith belief that there had been a Fourth Amendment waiver of the right to contest such a search as a condition of probation). Just as Georgia's exclusionary rule still applies even when an officer relies in good faith upon a defective search warrant, the exclusionary rule still applies even when an officer relies in good faith upon a form containing special conditions of bond that is defective for lack of evidence that the defendant had notice of and agreed to the conditions found in the form. As such, the officers' reliance on the Special Conditions Form, although in good faith, did not alter the fact that Curry's motion to suppress should have been granted.

Nevertheless, the concurring opinion relies upon a separate line of cases upholding warrantless searches based upon the consent of a third party whom officers reasonably (but erroneously) believed had authority to consent to the search on the defendant's behalf. See, e.g., *Illinois v. Rodriguez*, 497 U. S. 177 (110 SC 2793, 111 LE2d 148) (1990); *Warner v. State*, 299 Ga. App. 56, 59 (1) (681 SE2d 624) (2009); *Pike v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004); *Ford v. State*, 214 Ga. App. 284, 286 (3) (447 SE2d 334) (1994). Those cases involved situations where officers came in face-to-face contact with a third party at the scene of the search, obtained that party's consent to the search, and then executed a warrantless search based upon the belief that the third party had authority to give such consent. In those cases, there was actual evidence in the record that the officers executing the search believed that a third party had given consent to search.

That is far different from the situation here. None of the officers in this case testified that they believed that the undecipherable signature on the Special Conditions Form belonged to defense counsel or that they had relied upon such a belief as justification for their warrantless search. Thus, there was no evidence that the officers relied on the consent of a third party (i.e., defense counsel) in deciding to execute the warrantless search.[12] The cases cited by the concurring opinion, therefore, are simply inapposite. It is not suffi-

---

[12] It is just as plausible that the officers erroneously believed that the signature on the Special Conditions Form belonged to Curry herself, and clearly the line of cases pertaining to third party consent would not apply under that circumstance.

cient that the officers relied generally on a defective Special Conditions Form without any further evidence that the officers believed that they were relying upon a third party's consent, if the very line of cases upon which the concurring opinion purports to rely is predicated specifically on an officer's reliance on such consent.

For these combined reasons, I believe that the trial court erred in finding that the officers were justified in conducting a warrantless search of Curry's residence, and, therefore, erred in denying her motion to suppress the evidence discovered in her bedroom. Curry's convictions should be reversed and the case remanded to the trial court with direction to grant her motion to suppress.

I am authorized to state that Judge Adams joins in this dissent.

DECIDED MARCH 30, 2011 —
RECONSIDERATION DENIED APRIL 14, 2011 — 

*Timothy L. Eidson, Steven D. Knittle*, for appellant.
*Denise D. Fachini, District Attorney, Matthew P. Brown, Assistant District Attorney*, for appellee.